IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 5, 2002 Session

## STATE OF TENNESSEE v. PERRY THOMAS RANDOLPH

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Putnam County**
**No. 99-0493      Leon Burns, Judge**

---

**No. M2000-02293-SC-R11-CD - Filed May 3, 2002**

---

We granted review to determine whether a "seizure" within the meaning of the Fourth Amendment to the United States Constitution and article I, § 7 of the Tennessee Constitution occurs when a police officer activates the blue lights on his patrol car and orders a person to stop, but the person flees and does not submit to authority. The trial court suppressed evidence obtained from the defendant after determining that the officer lacked reasonable suspicion, supported by specific and articulable facts, that the defendant had committed a crime before seizing the defendant by activating his blue lights and ordering him to stop. The Court of Criminal Appeals concluded that there was no seizure because the defendant fled and did not yield to the officer's show of authority and reversed the judgment.

After a thorough review of the record and the relevant authority, we hold that under the circumstances of this case, the defendant was seized when the officer activated the blue lights on his patrol car, ordered the defendant to stop, and pursued him for several blocks. Because the officer lacked reasonable suspicion or probable cause to effect such a seizure, the evidence seized from the defendant was properly suppressed by the trial court. Accordingly, we reverse the judgment of the Court of Criminal Appeals and reinstate the judgment of the trial court.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Reversed; Judgment of the Trial Court Reinstated**

E. RILEY ANDERSON, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Charles L. Hardin, Cookeville, Tennessee, for the appellant, Perry Thomas Randolph.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; David H. Findley, Assistant Attorney General; William Edward Gibson, District Attorney General; and David Patterson, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

# BACKGROUND

The defendant, Perry Thomas Randolph, was indicted on one count of theft, one count of burglary, one count of aggravated assault, and one count of resisting arrest. The defendant filed a motion to suppress the items seized from him at the time of his arrest. The evidence presented at the suppression hearing before the trial court is summarized below.

On April 27, 1998, at approximately 8:30 p.m., Officer Mitch Harrington of the Cookeville City Police Department, responded to a possible burglary in progress at Doc's Auto and Tire Store ("Doc's") located at the corner of First Street and Hickory Avenue in Cookeville, Tennessee.[1] Officer Harrington, who was positioned nine blocks away at 10th Street and Washington, drove to 7th Street and turned south onto Hickory Avenue. As Officer Harrington drove down Hickory past 6th Street, he noticed the defendant, Perry Thomas Randolph, about one and a half blocks away near 4th Street, riding a small, chrome-silver BMX-style bicycle north on Hickory toward him. The time was approximately 8:45 p.m. Officer Harrington stopped his car and radioed for a description of the suspect at Doc's, but he was told that a "white male" was the only description available.

Randolph reached 5th Street and rode through the intersection toward Officer Harrington, who activated the blue lights on his patrol car with the intent to stop and identify the defendant. As Randolph neared the patrol car, the officer rolled down the window and ordered him to stop. Officer Harrington testified that Randolph, who was within three feet of the officer's car, looked at him but kept riding. When Officer Harrington again asked Randolph to stop, he rode away faster.

Officer Harrington turned his car around, heading north on Hickory Avenue in pursuit of the defendant, who turned west onto 6th Street. As Officer Harrington turned onto 6th Street, he saw the defendant's bicycle in the middle of the road approximately 50 feet from the intersection and the defendant was standing in a ditch on the left side of the road. As Officer Harrington approached in his patrol car, Randolph began to pull up his shirt and eventually withdrew a shotgun from inside of his pants. Officer Harrington, who was approximately five feet away, stopped his car, withdrew his weapon, exited the car, and ordered Randolph to drop his weapon, which was pointed in an upward direction. Randolph tossed the shotgun and two boxes of ammunition into the grass and fled. Officer Harrington then went to his car to release the drug detection dog and when he turned around, Randolph was on the ground. After Randolph was arrested, it was discovered that the shotgun, the ammunition, and a phone found in his possession had been stolen from Doc's.

---

[1] Officer Harrington, who was assigned to the K-9 unit, testified that he was not specifically dispatched to Doc's, but was told to respond due to shift policy that K-9 units respond to "in progress" calls.

Officer Harrington testified at the suppression hearing that he was not looking for anyone while driving towards Doc's and that there was nothing to alert him that the defendant was involved in a crime. Officer Harrington testified that he stopped the defendant based on a hunch because the defendant was riding a bicycle around 8:45 p.m. away from the location where a possible burglary was reported, and because he also thought it was unusual for the defendant to ride a bicycle standing up. Officer Harrington stated that he activated his blue lights to identify himself as an officer and that he asked the defendant to stop so that he could identify him.

Following the suppression hearing, the trial court suppressed the evidence because Officer Harrington did not have reasonable suspicion, supported by specific and articulable facts, that a crime had been committed by Randolph when he activated the blue lights on his patrol car and ordered Randolph to stop. The Court of Criminal Appeals reversed the trial court's decision, finding that there was no seizure because the defendant did not stop or submit to the officer's show of authority.

We granted the defendant's application for permission to appeal.

## STANDARD OF REVIEW

When evaluating the correctness of a trial court's ruling on a pretrial motion to suppress, an appellate court must uphold the trial court's findings of fact unless the evidence preponderates otherwise. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); see also State v. Munn, 56 S.W.3d 486, 493 (Tenn. 2001). Issues of credibility of witnesses, the weight and value of the evidence, and the resolution of conflicts in the evidence are matters entrusted to the trial judge. State v. Odom, 928 S.W.2d at 23. The prevailing party "is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Id.; see also State v. Binette, 33 S.W.3d 215, 217 (Tenn. 2000). This Court, however, is not bound by the trial court's conclusions of law. State v. Simpson, 968 S.W.2d 776, 779 (Tenn. 1998). Where the issue before this Court is the application of law to undisputed facts, then review is *de novo*. State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000).

## ANALYSIS

The Fourth Amendment to the United States Constitution provides for "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." Similarly, article I, § 7 of the Tennessee Constitution states, "That the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures . . . ." The essence of the prohibition against unreasonable searches and seizures under the Fourth Amendment is to "safeguard the privacy and security of individuals against arbitrary invasions of government officials." Camara v. Municipal Court, 387 U.S. 523, 528, 87 S. Ct. 1727, 1730 (1967); see also State v. Daniel, 12 S.W.3d at 424. Article I, § 7 is "identical in intent and purpose with the Fourth Amendment." Sneed v. State, 423 S.W.2d 857, 860 (Tenn. 1968); see also State v. Downey, 945 S.W.2d 102 (Tenn. 1997).

According to both the Fourth Amendment and article I, § 7 of the Tennessee Constitution, "a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997) (citation omitted); see also State v. Binette, 33 S.W.3d at 218. One exception to the warrant requirement arises "when a police officer makes an investigatory stop based upon reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed." State v. Binette, 33 S.W.3d at 218; see also Terry v. Ohio, 392 U.S. 1, 20-21, 88 S. Ct. 1868, 1879 (1968).

In the present case, the defendant argues that he was illegally seized because Officer Harrington did not have reasonable suspicion, supported by specific and articulable facts, that he had committed a crime when the officer activated the blue lights on his patrol car and ordered him to stop. The State responds that the defendant was not "seized" upon the officer's activation of the patrol car's blue lights and order to stop, because the defendant did not stop or yield to the officer's show of authority as the United States Supreme Court has required in California v. Hodari D., 499 U.S. 621, 111 S. Ct. 1547 (1991). In reply, the defendant argues that this Court has never adopted and should reject the requirement of actual physical restraint or submission to a show of authority as a condition for a "seizure."

We initially note in this regard that when interpreting article I, § 7 of the Tennessee Constitution, this Court will generally depart from federal precedent only when "(1) adopting federal Fourth Amendment standards would require overruling 'a settled development of state constitutional law;' and (2) when linguistic differences justify distinct interpretations of state and federal constitutional provisions." State v. Vineyard, 958 S.W.2d 730, 733-34 (Tenn. 1997) (citations omitted). However, we have stated:

> [A]s to Tennessee's Constitution, we sit as a court of last resort, subject solely to the qualification that we may not impinge upon the minimum level of protection established by Supreme Court interpretations of the federal constitutional guarantees. But state supreme courts, interpreting state constitutional provisions, may impose higher standards and stronger protections than those set by the federal constitution. It is settled law that the Supreme Court of a state has full and final power to determine the constitutionality of a state statute, procedure, or course of conduct with regard to the state constitution, and this is true even where the state and federal constitutions contain similar or identical provisions.

Miller v. State, 584 S.W.2d 758, 760 (Tenn. 1979) (citations omitted). As a result, this Court has not hesitated to extend greater privacy protections to the citizens of this State when appropriate under article I, § 7 of the Tennessee Constitution. See Planned Parenthood of Middle Tennessee v.

Sundquist, 38 S.W.3d 1, 15 (Tenn. 2000); State v. Jacumin, 778 S.W.2d 430, 436 (Tenn. 1989). We now turn to the issues presented in this case with these principles in mind.

As the State correctly asserts, in 1991, a majority of the United States Supreme Court limited its earlier decision in United States v. Mendenhall, 446 U.S. 544, 100 S. Ct. 1870 (1980), which had held that a seizure occurs when a person reasonably believes he or she is not free to leave the scene, by holding that a person is "seized" for purposes of the Fourth Amendment only where an officer uses physical force to detain a person or where a person submits or yields to a show of authority by the officer. California v. Hodari D., 499 U.S. at 626, 111 S. Ct. at 1550. Under the Court's latest analysis, a seizure "does not remotely apply . . . to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee." Id. at 626, 111 S. Ct. at 1550.

While some state courts have followed Hodari D.,[2] the majority's analysis has been rejected by numerous other state courts on state constitutional grounds.[3] The extensive criticisms of Hodari D. cited by these courts may be summarized as follows. First, the majority's analysis in Hodari D. represents a marked departure from the standard the Supreme Court adopted in United States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877 (1980), *i.e.*, that a seizure occurs when "in view of all of the circumstances surrounding the incident, a reasonable person would have believed

---

[2] California, Colorado, Florida, Georgia, Idaho, Louisiana, Maryland, Mississippi, Nebraska, North Carolina and Texas have all expressly adopted Hodari D., though not all have done so on state constitutional grounds. See People v. Cartwright, 72 Cal. App. 4th 1362, 1364, 85 Cal. Rptr. 788, 789 (Cal. Ct. App. 1999); People v. Archuleta, 980 P.2d 509, 514-15 (Colo. 1999); Perez v. State, 620 So.2d 1256, 1258 (Fla. 1993); Hunt v. State, 423 S.E.2d 24, 25 (Ga. Ct. App. 1992); State v. Agundis, 903 P.2d 752, 758 (Idaho Ct. App. 1995); State v. Tucker, 626 So.2d 707, 712 (La. 1993); Brummel v. State, 685 A.2d 835, 836 (Md. Ct. Spec. App. 1996); Harper v. State, 655 So.2d 864, 867 (Miss. 1994); State v. Cronin, 509 N.W.2d 673, 676 (Neb. Ct. App. 1993); State v. West, 459 S.E.2d 55 (N.C. Ct. App. 1995); Johnson v. State, 912 S.W.2d 227, 233-34 (Tex. Crim. App. 1995).

[3] Connecticut, Delaware, Hawaii, Kentucky, Massachusetts, Minnesota, New Jersey, New York, Pennsylvania and Washington have rejected Hodari D. on state constitutional grounds. State v. Oquendo, 613 A.2d 1300, 1310 (Conn. 1992) (holding that state constitutional protections were broader than Fourth Amendment and that there was no distinction between a seizure and/or an attempted seizure); Jones v. State, 745 A.2d 856, 869 (Del. 1999) (holding that police order to suspect to stop and take his hands out of his pockets was a seizure under the state constitution); State v. Quino, 840 P.2d 358, 364 (Haw. 1992), cert denied 507 U.S. 1031 (extending greater protection under state constitution and refusing to allow officers to place individuals in a coercive environment in order to develop reasonable suspicion to justify their detention); Baker v. Commonwealth, 5 S.W.3d 142, 145 (Ky. 1999) (holding that an order to a suspect to remove his hands from his pockets constituted a seizure); Commonwealth v. Stoute, 665 N.E.2d 93, 94-98 (Mass. 1996) (holding on state constitutional grounds that a pursuit intended to stop and detain is a seizure and adhering to Mendenhall analysis); Welfare of E.D.J., 502 N.W.2d 779, 781-83 (Minn. 1993) (*cited with approval in* State v. Riley, 568 N.W.2d 518, 523 (Minn. 1997) (Although the language of the state constitution was identical to the Fourth Amendment, court declined to adopt the Hodari D. analysis, preferring to follow the standard announced in Mendenhall.); State v. Tucker, 642 A.2d 401, 405 (N.J. 1994) (holding that the definition of seizure announced in Hodari D. would be a radical departure from the definition espoused by Mendenhall); People v. Bora, 634 N.E.2d 168, 167-70 (N.Y. 1994) (Although the language of the state constitution was similar to the Fourth Amendment, the court rejected the analysis used in Hodari D.); Commonwealth v. Matos, 672 A.2d 769, 776 (Pa. 1996) (Although the language of the state constitution was essentially the same as the Fourth Amendment, the Court rejected the definition of seizure espoused in Hodari D. and adhered to Mendenhall.); State v. Young, 957 P.2d 681, 686-87 (Wash. 1998) (greater protection under state constitution; declining to depart from precedent by applying Hodari D.).

he was not free to leave." Second, the majority's analysis fails to apply common law principles under which an arrest would not be distinguished from an attempted arrest in determining whether a person has been seized. Third, the majority's analysis is flawed for practical reasons and is subject to potential abuse by officers who pursue a subject without reasonable suspicion and use a flight or refusal to submit to authority as reason to execute an arrest or search. See California v. Hodari D., 499 U.S. at 638-41, 646-47, 111 S. Ct. at 1557-58, 1561-62 (Stevens, J., dissenting).

Although Hodari D. was decided in 1991, this Court has never adopted its narrow, literal standard under article I, § 7 of the Tennessee Constitution. To the contrary, in determining whether a person has been seized, we have adhered to a totality of the circumstances standard. See State v. Binette, 33 S.W.3d at 218; State v. Daniel, 12 S.W.3d at 425; State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993); see also State v. Gonzalez, 52 S.W.3d 90, 95 (Tenn. Crim. App. 2000). Moreover, we have consistently applied the standard set forth by the United States Supreme Court in Mendenhall, 446 U.S. at 554, 100 S. Ct. at 1877, *i.e.*, whether, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed he or she was not free to leave." State v. Daniel, 12 S.W.3d at 425 (citations omitted); see also State v. Pulley, 863 S.W.2d at 30.

Just two years ago in State v. Daniel, for example, we held that an officer's conduct in approaching a defendant and asking to see identification did not constitute a seizure until after the officer retained the identification for the purpose of running a computer warrants check. State v. Daniel, 12 S.W.3d at 427. We stated that "a 'seizure' implicating constitutional concerns occurs only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave." Id. at 425 (citing Florida v. Bostick, 501 U.S. 429, 437, 111 S. Ct. 2382, 2386 (1991)); Michigan v. Chesternut, 486 U.S. 567, 574, 108 S. Ct. 1975, 1979 (1988); INS v. Delgado, 466 U.S. 210, 215, 104 S. Ct. 1758, 1762 (1984); and Mendenhall, 446 U.S. at 556, 100 S. Ct. at 1877).

In reaching our holding in Daniel, we identified numerous factors that are relevant to the totality of the circumstances test:

> the time, place and purpose of the encounter; the words used by the officer; the officer's tone of voice and general demeanor; the officer's statements to others who were present during the encounter; the threatening presence of several officers; the display of a weapon by an officer; and the physical touching of the person of the citizen.

Id. at 425-26. Moreover, while we said that this analysis is "necessarily imprecise," we listed several police encounters generally held to constitute "seizures":

> [where the officer] (1) pursues an individual who has attempted to terminate the contact by departing; (2) continues to interrogate a person who has clearly expressed a desire not to cooperate; (3) renews interrogation of a person who has earlier responded fully to police inquiries; (4) verbally orders a citizen to stop and answer

-6-

questions; (5) retains a citizen's identification or other property; (6)
physically restrains a citizen or blocks the citizen's path; (7) displays
a weapon during the encounter.

Id. at 426 (emphasis added) (citing 4 Wayne R. LaFave, Search and Seizure, § 9.3, at 104 (3d ed. 1996 & Supp. 1999)); see also State v. Binette, 33 S.W.3d at 218 ("Upon turning on the blue lights of a vehicle, a police officer has clearly initiated a stop and has seized the subject of the stop . . . .") (citation omitted); State v. Pulley, 863 S.W.2d at 30 ("When an officer turns on his blue lights, he or she has clearly initiated a stop.") (citations omitted).

In our view, the principles stated recently by this Court in Daniel, as well as our decisions in Binette and Pulley, clearly require that we reject the narrow, oft-criticized standard in Hodari D. under article I, § 7 of the Tennessee Constitution. Whether a person has been physically restrained or has stopped or yielded to the show of authority is not dispositive of whether there has been a seizure. Instead, we adhere to the well-established analysis and standard enunciated in our recent cases, *i.e.*, a totality of the circumstances analysis and the standard of whether a reasonable person would have believed he or she was not free to leave.

Accordingly, we join those jurisdictions that have rejected the Hodari D. standard on state constitutional grounds in favor of existing state precedent. As the Supreme Court of Washington has said:

> Washington search and seizure law stemming from *Terry* and proceeding through *Mendenhall* is well-established. Were we to adopt *Hodari D.* and its new definition of seizure . . . , we would be departing from our precedents and the greater protection of privacy afforded Washington citizens under [the state constitution]. Given the erosion of privacy the *Hodari D.* decision entails, we adhere to our established jurisprudence and reject application of the test for a seizure articulated in *Hodari D.* . . . under [the state constitution].

State v. Young, 957 P.2d 681, 687 (Wash. 1998) (en banc); see also State v. Tucker, 642 A.2d 401, 405 (N.J. 1994) ("To conform our doctrine now to *Hodari D.* would require too radical a change in our search-and-seizure law."); State v. Oquendo, 613 A.2d 1300, 1310 (Conn. 1992) ("[W]e decline to adopt the restricted definition of a seizure employed by the United States Supreme Court in *Hodari D.* and adhere to our precedents in determining what constitutes a seizure under the state constitution.").

Turning to the facts of this case, it is undisputed that 15 minutes after Officer Harrington received notification of a possible burglary in progress at Doc's, he saw the defendant riding a small, chrome-silver BMX-style bicycle in his direction approximately four blocks away from Doc's. Officer Harrington requested a description and was told only that the suspect was a white male. Based merely on a hunch, Officer Harrington decided to stop the defendant, activated his blue lights to identify himself as an officer, and ordered the defendant to stop. When the defendant ignored the

order and kept going, Officer Harrington turned his police car around and pursued the defendant for approximately one and one-half blocks.

As we have discussed, not every encounter between police officers and citizens involve "seizures." See Terry v. Ohio, 392 U.S. at 19, 88 S. Ct. at 1879 n.16 ("Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."); see also State v. Daniel, 12 S.W.3d at 424; State v. Crutcher, 989 S.W.2d 295, 300 (Tenn. 1999). In this case, however, even though Officer Harrington did not initially draw a weapon or make physical contact, we conclude that Randolph was "seized" when the officer made a show of authority by activating the blue lights on his patrol car and instructing him to stop. See State v. Daniel, 12 S.W.3d at 426 ("verbally orders a citizen to stop and answer questions"); State v. Binette, 33 S.W.3d at 218 ("Upon turning on the blue lights of a vehicle, a police officer has clearly initiated a stop and has seized the subject of the stop . . . ."); State v. Pulley, 863 S.W.2d at 30 ("When an officer turns on his blue lights, he or she has clearly initiated a stop.").[4] In sum, in view of all of the circumstances, a reasonable person would have believed he was not free to leave the scene or walk away from the officer. Accordingly, we hold that the defendant was "seized" for the purpose of article I, § 7 of the Tennessee Constitution and that the trial court was correct in suppressing the evidence.

## CONCLUSION

After a thorough review of the record and the relevant authority, we hold that under the circumstances of this case the defendant was seized when the officer activated the blue lights on his patrol car, ordered the defendant to stop, and pursued him for several blocks. Because the officer lacked reasonable suspicion or probable cause to effect such a seizure, the evidence seized from the defendant was properly suppressed by the trial court. Accordingly, we reverse the judgment of the Court of Criminal Appeals and reinstate the judgment of the trial court.

Costs of this appeal are taxed to the State.

_____
E. RILEY ANDERSON, JUSTICE

---

[4] See also Jones v. State, 745 A.2d 856, 869 (Del. 1999) (holding that police order to suspect to stop and take his hands out of his pockets was a seizure under the state constitution); Baker v. Commonwealth, 5 S.W.3d 142, 145 (Ky. 1999) (holding that an order to a suspect to remove his hands from his pockets constituted a seizure); Commonwealth v. Stoute, 665 N.E.2d 93, 94-98 (Mass. 1996) (holding on state constitutional grounds that a pursuit intended to stop and detain is a seizure).