IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 12, 2004 Session

**STATE OF TENNESSEE v. JAMES D. NICHOLSON**

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2003-C-2381     J. Randall Wyatt, Jr., Judge**

———————————

**No. M2004-00111-CCA-R3-CD - Filed January 25, 2005**

———————————

GARY R. WADE, P.J., dissenting.

I would affirm the judgment of the trial court. In my view, the defendant was not seized when the officer directed him to "hold up." Further, the defendant's flight, coupled with his presence in an area known for drug trafficking, provided the officers with reasonable suspicion to pursue and detain him for further inquiry. That he was not a resident of the housing project, refused to provide his name or identification, and refused to provide the name of the individual he claimed to be visiting established probable cause to arrest him for trespassing.

It is well established that both the state and federal constitutions protect against unreasonable searches and seizures. U.S. Const. amend. IV; Tenn. Const. art. I, § 7; Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971); State v. Bridges, 963 S.W.2d 487, 490 (Tenn. 1997). Neither, however, is intended to limit all contact between citizens and law enforcement and are designed, instead, "'to prevent arbitrary and oppressive interference with the privacy and personal security of individuals.'" INS v. Delgado, 466 U.S. 210, 215 (1984) (quoting United States v. Martinez-Fuerte, 428 U.S. 543, 554 (1976)). As pointed out by the majority, our courts have recognized three types of encounters between citizens and law enforcement: (1) a full-scale arrest, which must be supported by probable cause; (2) an investigatory stop, which must be supported by reasonable suspicion; and (3) a brief police-citizen encounter, which requires no objective justification. See Florida v. Bostick, 501 U.S. 429, 434 (1991); Brown v. Illinois, 422 U.S. 590 (1975); State v. Daniel, 12 S.W.3d 420 (Tenn. 2000).

In United States v. Drayton, 536 U.S. 194, 201-02 (2002), the Supreme Court determined that, as to the third type of encounter, there is no Fourth Amendment violation when an officer simply approaches a person in a public place and poses a question. Even when there is no basis to suspect a crime, officers may ask questions, ask for identification, and ask for consent to conduct a search, so long as the means used to induce the cooperation are not coercive. Id.; see Daniel, 12

S.W.3d at 425. A reviewing court must examine "all the circumstances surrounding the encounter" to determine whether the law enforcement conduct indicated a lack of freedom "to decline the officers' requests or otherwise terminate the encounter." Bostick, 501 U.S. at 439.

Our supreme court has held that the relevant question when distinguishing between a brief police-citizen encounter and a seizure is whether "in view of all the circumstances surrounding the conduct, a reasonable person would have believed he or she was not free to leave." State v. Randolph, 74 S.W.3d 330, 335 (Tenn. 2002). The subjective intent of the officer is not controlling. State v. Johnson, 980 S.W.2d 414 (Tenn. Crim. App. 1998). In Randolph, our high court enumerated several factors to be considered when determining whether an individual has been seized:

1. The time, place, and purpose of the encounter;
2. the words used by the officer;
3. the officer's tone of voice and general demeanor;
4. the officer's statements to others who were present during the encounter;
5. the threatening presence of several officers;
6. the display of a weapon by an officer; and
7. the physical touching of the person of the citizen.

Randolph, 74 S.W.3d at 336-37.

In this case, the encounter occurred late at night in an area known for drug trafficking. Only moments earlier, Detective Lockwood, who was wearing a "raid vest" with Metro Police Department insignia on it, had witnessed a number of hand-to-hand drug transactions. When he saw the defendant, Detective Lockwood "squared more to him and told him to hold up." The officer's tone of voice and general demeanor are not apparent from the record. During the encounter, no statements were made to the other officers present. Detective Lockwood testified that while he was in closest proximity to the defendant, "there were several uniformed officers just up the hill from where [he] was, with their cars parked at the top of Henry Place." The officers did not touch the defendant during the initial encounter and no weapon was displayed.

In my view, these factors support the trial court's ruling that the defendant was not seized when Detective Lockwood told him to "hold up." It is further my view that the defendant's flight upon being told to "hold up," coupled with the other circumstances of the encounter, provided the officers with reasonable suspicion to pursue and apprehend him.

In State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993), our supreme court ruled that "the reasonableness of seizures less intrusive than a full-scale arrest is judged by weighing the gravity of the public concern, the degree to which the seizure advances that concern, and the severity of the intrusion into individual privacy." While probable cause is not necessary for an investigative stop, the officer must have "reasonable, articulable suspicion that criminal activity is afoot" and that suspicion must be supported by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio, 392 U.S. 1, 21 (1968); see also Pulley, 863 S.W.2d at 30.

The facts of this case are very similar to those in <u>Illinois v. Wardlow</u>, 528 U.S. 119 (2000). In <u>Wardlow</u>, which provides guidance on the propriety of the stop, a four-car caravan of police officers converged on an area known for drug trafficking. As they approached, one of the officers noticed Wardlow standing next to the building holding an opaque bag. Wardlow looked in the direction of the officers and then fled on foot. The officers eventually cornered him and discovered a firearm in the bag he was carrying. The Supreme Court held that Wardlow's presence in a high crime area and his flight upon seeing the officers established reasonable suspicion for the officers to pursue. The Court determined that while "[a]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime," police officers need not "ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." <u>Id.</u> at 124 (citation omitted). The Court specifically observed that the defendant's presence in a "high crime area" is among the relevant considerations when assessing reasonable suspicion. <u>See</u> <u>id.</u> (citing <u>Adams v. Williams</u>, 407 U.S. 143, 144 (1972)). The Court also observed that "it was not merely [Wardlow's] presence in an area of heavy narcotics trafficking that aroused the officers' suspicion but his unprovoked flight upon noticing the police." <u>Id.</u> It concluded that "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." <u>Id.</u> (citing <u>United States v. Brignoni-Ponce</u>, 422 U.S. 873, 885 (1975); <u>Florida v. Rodriguez</u>, 469 U.S. 1, 6 (1984) (per curiam); <u>United States v. Sokolow</u>, 490 U.S. 1, 8-9 (1989)). The Court ruled that "[h]eadlong flight -- wherever it occurs -- is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." <u>Id.</u> While noting that a citizen may lawfully refuse to cooperate with the police and is free to terminate the encounter at any time, the Court ruled that "unprovoked flight is simply not a mere refusal to cooperate." <u>Id.</u> at 125.

Here, Detective Lockwood and several other officers had gone to Henry Place to investigate gang activity. When they arrived, they observed a number of hand-to-hand drug transactions taking place in an area known for such crimes. They chased those involved but were unable to apprehend anyone. When Detective Lockwood returned to the area, he saw the defendant and directed him to "hold up." It is my opinion that when the defendant ran, the Detective had reasonable suspicion to pursue and further investigate. Because the defendant refused to provide his name, identification, or the name of the person he claimed to be visiting at the housing project, the officers had probable cause to arrest him for criminal trespass. The subsequent search incident to that arrest, wherein the officers discovered cocaine in the defendant's possession, was thus lawful. Accordingly, I would affirm the judgment of the trial court.

_____
GARY R. WADE, PRESIDING JUDGE