IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 16, 2005

## STATE OF TENNESSEE v. ANTONIO D. JONES

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2002-A-290     Mark Fishburn, Judge**

---

**No. M2004-01349-CCA-R3-CD - Filed August 12, 2005**

---

THOMAS T. WOODALL, J., dissenting.

I respectfully dissent. Based upon my review of the record, the encounter leading up to Defendant's consent to submit to a search was a brief police-citizen encounter requiring no objective justification. *State v. Daniel*, 12 S.W.3d 420, 424 (Tenn. 2000). Accordingly, I would affirm the judgment of the trial court.

In *State v. Randolph*, 74 S.W.3d 330, 336 (Tenn. 2002), the Court held that under Article I, section 7 of the Tennessee Constitution, in determining whether there is a "seizure" of a person (and not a brief police-citizen encounter) the proper standard is that set forth by the United States Supreme Court in *United States v. Mendenhall*, 446 U.S. 544 (1980) whether "in view of all of the circumstances surrounding the incident, a reasonable person would have believed he or she was not free to leave." *Randolph*, 74 S.W.3d at 336 (quoting *Mendenhall*, 446 U.S. at 554).

The Tennessee Supreme Court has identified numerous factors that are relevant to the totality of the circumstances test:

> the time, place and purpose of the encounter; the words used by the officer; the officer's tone of voice and general demeanor; the officer's statements to others who were present during the encounter; the threatening presence of several officers; the display of a weapon by an officer; and the physical touching of the person of the citizen.

*Randolph*, 74 S.W.3d at 337 (quoting *Daniel*, 12 S.W.3d at 427). Furthermore, in *Daniel*, the Court stated that while this analysis is "necessarily imprecise," there are several police encounters generally held to constitute "seizures":

> [where the officer] (1) pursues an individual who has attempted to terminate the contact by departing; (2) continues to interrogate a person who has clearly expressed a desire not to cooperate; (3) renews interrogation of a person who has earlier

responded fully to police inquiries; (4) verbally orders a citizen to stop and answer questions; (5) retains a citizen's identification or other property; (6) physically restrains a citizen or blocks the citizen's path; (7) displays a weapon during the encounter.

*Randolph*, 74 S.W.3d at 337 (quoting *Daniel*, 12 S.W.3d at 426). The Court's analysis in both *Daniel* and *Randolph* indicate that "the line of demarcation is drawn at the officer's communication of mandatory compliance with his or her request, as opposed to voluntary compliance by the citizen." *State v. James D. Nicholson*, No. M2004-00111-CCA-R3-CD, 2005 Tenn. Crim. App. LEXIS 78, *10 (Tenn. Crim. App., at Nashville, Jan. 25, 2005) (no Tenn. R. App. P. 11 application filed). Specifically, in *Daniel*, the court held,

> . . . courts have consistently held that the Fourth Amendment is *not* implicated and no seizure occurs when police approach an individual, in a public place, or in a parked car, ask questions, and request to search, so long as police do not convey a message that compliance with their requests is required.

*Daniel*, 12 S.W.3d at 426. (emphasis in original).

In *State v. Randolph*, an officer observed the defendant riding a bicycle a few blocks from the site of a possible burglary. *Randolph*, 74 S.W.3d at 332. The only description available of the burglary suspect was that the suspect was a "white male". *Id.* Acting on a "hunch," the officer activated the blue lights in his patrol car with the intent to stop and identify the defendant. *Id.* at 333. As the defendant neared the patrol car, the officer rolled down his window and told him to stop. *Id.* The defendant, who was within three feet of the vehicle, looked at the officer but kept riding. *Id.* When the defendant was eventually apprehended, he had several items in his possession which linked him to the burglary. *Id.* The Supreme Court ruled that the evidence should be suppressed, holding that "the defendant was seized when the officer activated the blue lights on his patrol car, ordered the defendant to stop, and pursued him for several blocks." *Id.* at 338.

The Court in *Daniel*, on the other hand, held that an officer's initial approach of the defendant did not constitute a seizure where the officer merely approached the defendant and his friends, who were standing around outside a vehicle in a parking lot, inquired what was going on, and asked to see identification. The Court held that at that point, there was no evidence that the officer physically restrained the defendant, instructed him not to walk away, or blocked his path. Therefore, no seizure occurred. However, when the officer retained the defendant's identification to run a computer warrants check, the consensual police-citizen encounter matured into a seizure of the person.

A panel of this Court recently followed *Randolph* and *Daniel* and held that the defendant was seized when, in the presence of multiple officers, a detective instructed the defendant to "hold up," pursued him on foot, and eventually apprehended him. *State v. James D. Nicholson*, No. M2004-00111-CCA-R3-CD, 2005 Ten. Crim. App. LEXIS 78, at *14-15 (Tenn. Crim. App., at

Nashville, Jan. 25, 2005) (no Tenn. R. App. P. 11 application filed). In *State v. James D. Nicholson*, several officers had arrived at the John Henry Hale Housing Projects for the purpose of conducting gang investigations, when they observed a large group of individuals, some of whom were engaging in "hand-to-hand drug transactions." *Id*. at *2. As the officers approached, several individuals ran. Later, one detective noticed the defendant walking toward Henry Place and told him to "hold up." *Id*. at *3. The defendant ran, but was chased and apprehended by officers. *Id.* The defendant refused to identify himself to detectives and insisted he was visiting someone, though he refused to reveal the name of the person he was visiting or where the person lived. The defendant was then placed under arrest for trespassing and a search incident to arrest revealed crack cocaine and cash in his possession. *Id.* at *3-4. The Court held that at the time the defendant was told to "hold up" and pursued by an officer, the officer did not have sufficient grounds to warrant the seizure. *Id.* at *22. As a result, the Court suppressed all evidence collected as a result of the seizure, vacated the conviction, and dismissed the charges. *Id.*

In the case *sub judice*, the first step of analysis is to determine whether the initial encounter between Officer Martin and Defendant amounted to a "seizure" under the standard adopted by our Supreme Court in *Randolph*. The facts are not in dispute. Officer Martin, in full uniform, approached Defendant in order to ascertain whether or not he was trespassing on MDHA property. Defendant saw the officer approaching, the two men looked at each other, and Defendant immediately walked quickly to a vehicle parked on the public street outside of MDHA property and then got into the back seat. The officer followed him to the car, and with the door open, the officer "asked him if [he] could talk to him . . . asked him to take his hands out of his pockets . . . and asked him to step from the vehicle." While cross-examination of Officer Martin resulted in some variance in the sequence and specifics of the conversation, the trial judge made the following findings of fact following the suppression hearing: "Officer Martin approached the vehicle, asked the defendant if he would mind exiting and speaking to the officer. The defendant agreed, exited the vehicle, and removed his hands from his pockets as requested."

I agree with the trial court that Officer Martin did not need reasonable suspicion or probable cause to approach Defendant and conduct investigatory questioning in order to ascertain whether or not Defendant was a resident of the MDHA housing complex. Nothing that happened after the officer began to approach Defendant indicates that it was more than a *consensual* police-citizen encounter. Nothing indicates that a reasonable person in Defendant's position would have believed he was not free to leave. The encounter between Defendant and Officer Martin does not fall within any of the police-citizen encounters which our Supreme Court listed in *Daniel* as being "seizures." *See Daniel*, 12 S.W.3d at 426. According to *Daniel*, a police-citizen encounter is a seizure where an officer (1) pursues an individual who has attempted to terminate the contact by departing; (2) continues to interrogate a person who has clearly expressed a desire not to cooperate; (3) renews interrogation of a person who has earlier responded fully to police inquiries; (4) verbally orders a citizen to stop and answer questions; (5) retains a citizen's identification or other property; (6) physically restrains a citizen or blocks the citizen's path; (7) displays a weapon during the encounter. *Daniel*, 12 S.W.3d at 426. Defendant argues that the encounter in the case *sub judice* fits into several of these categories.

Defendant argues that because Officer Martin continued to pursue Defendant after he, in the words of the trial court,"attempted to evade Officer Martin," the officer's actions fall within the first two police-citizen encounter categorized in *Daniel* as a "seizure" where an officer "pursues an individual who has attempted to terminate the contact by departing" or, where an officer "continues to interrogate a person who has clearly expressed a desire not to cooperate." Indeed, by noticing the approaching officer and immediately walking the other direction, Defendant clearly expressed his desire to avoid Officer Martin. However, his mere walking away a short distance from Officer Martin cannot be said to be an attempt to *terminate contact* with the officer, since no contact had been made at that time. Unlike the officers in *Randolph* and *Nicholson*, Officer Martin did not tell Defendant to stop. In fact, he said nothing to Defendant nor made any contact whatsoever with Defendant until *after* Defendant was seated in the back seat of the vehicle and the officer walked up to him and asked if he could talk to Defendant. There is nothing in the record to indicate that Defendant made any attempt to terminate the contact with Officer Martin once their conversation began. On the contrary, the record demonstrates that Defendant was "fully cooperative."

Next, Defendant argues that Officer Martin gave Defendant a verbal order to stop and answer questions when he asked Defendant to "step from the vehicle." Likewise, he also argues that when the officer walked up to the open car door where Defendant was seated, he physically blocked his path, and thus seized him. I disagree. First, because Defendant was already seated in a vehicle when the officer walked up to him, the officer's asking him to step out of the vehicle could not possibly be considered an "order to stop." Defendant had already "stopped" on his own volition when he sat down in the back seat of a parked vehicle. Second, although the record reflects that the officer walked up to the open door of the back seat of the vehicle where Defendant was seated, with his feet still outside the vehicle, it does not indicate that Defendant was attempting to exit the vehicle or that the officer in any way blocked him from doing so. Regardless, courts have consistently held that the Fourth Amendment is not implicated and no seizure occurs when an officer approaches a vehicle parked in a public place and asks the occupant questions. *Daniel*, 12 S.W.3d at 426; *see State v. Pulley*, 863 S.W.2d 29, 30 (Tenn. 1993).

Officer Martin asked Defendant if he would talk with the officer. Defendant consented to do so. Defendant was also asked if he would remove his hands from his pockets, and step outside the vehicle he was sitting in, in the back seat, with the door open.

If Officer Martin had <u>ordered</u> Defendant to get out of the vehicle, and/or had <u>ordered</u> Defendant to remove his hands from his pockets, and/or had <u>ordered</u> Defendant to answer questions, there would definitely had been a "seizure." However, there was no evidence that these things happened in this described manner. The trial judge observed the testimony of Officer Martin during both direct and cross-examination, and concluded, at least implicitly, that Officer Martin "did not convey a message [to Defendant] that compliance with [Officer Martin's] requests [was] required." *Daniel*, 12 S.W.3d at 426. Thus there was no seizure, and the judgment should be affirmed.

_____
THOMAS T. WOODALL, JUDGE