IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 4, 2005

## STATE OF TENNESSEE v. LESTER JAMES FARRIS, JR.

**Direct Appeal from the Circuit Court for Fayette County**
**No. 5522     J. Kerry Blackwood, Judge**

---

**No. W2005-01021-CCA-R3-CD  - Filed November 22, 2005**

---

This is a direct appeal as of right from jury verdict convictions for aggravated robbery, aggravated burglary and theft of property. The Defendant, Lester James Farris, Jr., was sentenced as a Range II, multiple offender to an effective twenty year sentence. The Defendant argues three issues on appeal: (1) the trial court erred in denying his motion to suppress a statement he made to law enforcement officers; (2) there is insufficient evidence to find him guilty beyond a reasonable doubt of the three offenses for which he was convicted; and (3) his sentence is excessive. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed,**
**Remanded Solely to Correct Error on Judgment**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

Shana Johnson, Assistant Public Defender, Somerville, Tennessee, for the appellant, Lester James Farris, Jr.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; and Elizabeth T. Rice, District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

The Defendant's three convictions result from his involvement in a home invasion on August 2, 2001, in which he and two of his cohorts unlawfully entered a home in Fayette County, held two victims at gunpoint, robbed them, tied them up with a telephone cord, and then fled in the victims' automobile. As a result of this incident a Fayette County grand jury indicted the Defendant in July of 2004 on charges of especially aggravated robbery, especially aggravated burglary, theft of property valued at $10,000 or more but less than $60,000, and aggravated kidnapping. The Defendant

subsequently filed a motion to suppress an incriminating statement he made to Investigator Ricky Wilson of the Fayette County Sheriff's Department. A pre-trial hearing was conducted and the Defendant's motion to suppress was denied. The Defendant received a jury trial in December of 2004.

The evidence presented at trial shows that the Defendant and two other men drove a stolen white van from Memphis to the home of Michael and Jerelyn Alperin (the victims) in Arlington. The Defendant walked into the victims' garage or carport and asked Mr. Alperin for work.[1] Mr. Alperin testified that he stepped inside his house to get a pencil to write down the Defendant's contact information when: "I heard the door open and the next thing I saw, a gun, somebody yelling." Jerelyn Alperin testified that she was standing nearby in the kitchen while her husband talked to a man at the door leading out to the garage when: "the next thing I knew, I saw a gun coming through." Mr. Alperin further stated that he was then forced to the floor with a gun to the back of his head; the assailants shouted that they were going to kill him and his wife; and the gunmen demanded he tell them where the "money and guns" were. Mrs. Alperin also testified that she was forced to the floor at gunpoint and her life was threatened.

After Mr. Alperin informed the two assailants where he kept some cash, they then forced him and his wife to get up off the floor and escorted them both to a back bedroom. Mrs. Alperin was forced to accompany one of the men to a different room for several minutes, and when she returned both victims were forced to lay face down on the bed and their hands were bound with a telephone cord. Mr. Alperin testified that when he raised his head to breathe, he was "hit on the side of the head with something metal and it knocked [him] out." Mr. Alperin could not remember how long he was unconscious, but as he came to, he heard his wife pleading, "please don't hurt him."

Mrs. Alperin testified that she was first escorted to the back bedroom by the "big man," whom she recognized from prior business dealings as Fred Hill. She was then forced to leave her husband and escorted at gunpoint to the master bedroom by the "thin man," whose face she never saw. While there, the man took some jewelry, and then escorted Mrs. Alperin back to the room where her husband was. After tying up the victims, the two men rummaged through the house for several more minutes, then Fred Hill returned to the room where the victims were tied up. He inquired about car keys he had found, and the two men left.

Mr. Alperin testified that after he was able to get his hands free he untied his wife. He then called his son on a cell phone to warn him that robbers may be looking for him while his wife called the police. Mr. Alperin further stated that the two men stole cash, jewelry, and their new car, which they had purchased for $23,000 only three to six months earlier. Rebecca Alperin, the victims' daughter, testified that after she learned of the burglary she flew in from Los Angeles the next day to be with her parents. She observed that her mother's wrists were bruised and her father's face was severely bruised. Mr. Alperin testified that he still had an indention in the side of his head where he was hit, and Mrs. Alperin testified that she suffered emotional difficulties due to the home invasion,

---

[1]The record on appeal describes the area of the Defendant's entrance as alternately a garage and a carport.

and was forced to seek medical treatment. At the time of the trial, Mrs. Alperin was still taking anti-depressant medication as a result of the incident.

Investigator Ricky Wilson testified at trial that he interviewed the victims and investigated the crime scene the day of the crime, but found few leads at the time. Ten days after the robbery the victims' car was recovered in Memphis, but the driver, James Dallas Jones, said he obtained the car from Fred Hill and a man he called "Chucky."[2] There was no evidence at the time to connect Mr. Jones with the burglary and robbery of the Alperins. He was never charged with any crimes connected to the incident at issue in this case. Mr. Jones, described as a thin man, died of a heart attack not long after speaking to Investigator Wilson.

Investigator Wilson also testified that he attempted to contact Fred Hill for quite some time, but Mr. Hill moved frequently and was difficult to find. The same day that the Investigator was able to track him down, Mr. Hill was shot and killed over a gambling debt before the Investigator could interview him. Little progress was made on the case until Mr. Alperin called Investigator Wilson in July of 2004, with a tip on the identity of one of the men involved in his 2001 home invasion. This tip led Investigator Wilson to the Defendant, who was being held by the Shelby County Sheriff's Department on unrelated charges. Investigator Wilson interviewed the Defendant, who waived his rights and volunteered a statement that described his involvement in the incident.

In this statement, presented to the jury and included in the record on appeal, the Defendant stated that he, Fred Hill and James Jones cased the Alperins' home the day before they robbed it. He said that the day of the robbery he "stayed outside as a lookout" while Fred Hill and James Jones went inside. His duty was to stay out in the white van so he could "honk the horn if someone was coming." He further stated that when Mr. Hill and Mr. James left the victims' house, they picked the Defendant up and they all drove back to Memphis in the victims' car, abandoning the van. The Defendant further stated he was paid $150.00 for acting as the lookout.

Investigator Wilson testified that he "Mirandized" the Defendant prior to taking his statement; the Defendant signed a written waiver of his rights; the Defendant initialed every answer he provided and signed each page of the written statement; the Defendant's testimony was not coerced; and that the Defendant was both "coherent" and free to leave the interview room at any time. On cross-examination, Investigator Wilson admitted that the Defendant had recently been shot by Memphis Police in an unrelated altercation; he was initially "upset with law enforcement"; and while the Defendant was free to leave the interview, he was still in the custody of the Shelby County Sheriff's Department and not free to leave the building.

The Defendant elected not to testify or put forward any evidence at trial.

---

[2]The record reveals that "Chucky" was an alias used by the Defendant on occasion.

At the conclusion of the trial the jury convicted the Defendant of aggravated robbery, aggravated burglary, and theft of property valued at $10,000 or more but less than $60,000.[3] The Defendant was found not guilty of the offense of aggravated kidnapping. The Defendant was subsequently sentenced as a Range II, multiple offender to twenty years for the Class B felony aggravated robbery conviction, and seven years each for his Class C felony aggravated burglary and theft of property convictions. The sentences were ordered to be served concurrently for an effective twenty year sentence.[4] The Defendant filed a motion for judgment of acquittal, or in the alternative a new trial, both of which were denied by the trial court in April of 2005. This appeal followed.

**ANALYSIS**

The Defendant asserts on appeal that his motion to suppress the statement he made to Investigator Wilson "should have been granted," that the "evidence is not sufficient to establish proof of guilt beyond a reasonable doubt," and that his "sentence is excessive." We conclude that the Defendant is not entitled to relief on any of the three claims.

**I. Motion to Suppress**

In his first issue, the Defendant asserts that the trial court erred when it failed to suppress the custodial statement he made to Investigator Wilson. To support this claim, the Defendant argues that under the "circumstances" his confession was involuntary. The Defendant argues that because he had recently been shot in the back by Memphis Police officers, was still wearing a neck brace when interviewed, "initially did not want to speak with Officer Wilson," and was not at liberty to leave the building, his "free will" had been "undermined." Thus, the Defendant argues, his confession was involuntary, and his rights under Miranda and the Fifth Amendment were violated. Therefore, the Defendant asserts, his statement should have been suppressed and the trial court erred in failing to do so.

The findings of fact made by the trial court at a hearing on a motion to suppress are conclusive on appeal and binding upon this Court unless the evidence preponderates otherwise. State v. Ross, 49 S.W.3d 833, 839 (Tenn. 2001); State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). However, this Court is not bound by the trial court's conclusions of law, see State v. Randolph, 74 S.W.3d 330, 333 (Tenn. 2002), as the application of the law to the facts found by the trial court are questions of law that this Court reviews de novo on appeal. State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000); State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997). Furthermore, questions of the "credibility of the witness, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Yeargan, 958 S.W.2d at 628. The prevailing party is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that can be drawn from that evidence. State v. Hicks, 55 S.W.3d 515, 521 (Tenn. 2001); Odom, 928 S.W.2d at 23. Finally, both

---

[3]The jury found the Defendant guilty of lesser-included offenses within the indicted especially aggravated robbery and especially aggravated burglary charges.

[4]The sentencing information cited in this opinion was obtained from the judgment forms in the technical record. The Defendant/Appellant has failed to include in the record any transcripts from the sentencing hearing.

the evidence presented at the suppression hearing and the proof adduced at trial may be considered in reviewing the trial court's ruling on a motion to suppress. State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998).

The Fifth Amendment to the United States Constitution provides, in relevant part, that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Likewise, the Tennessee Constitution guarantees that "in all criminal prosecutions, the accused . . . shall not be compelled to give evidence against himself." Tenn. Const. art. I, § 9. In Miranda v. Arizona, the United States Supreme Court held that the Fifth Amendment prohibition against self-incrimination, as applied to the states through the Fourteenth Amendment, requires police officers to advise a defendant of his or her right to remain silent and right to counsel before they could engage in custodial interrogation. See 384 U.S. 436, 479 (1966). "Custodial interrogation" was defined by the Court as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. at 444. If these warnings are not given, any statements elicited from the accused are not permitted to be used in the prosecution's case-in-chief. See Stansbury v. California, 511 U.S. 318, 322 (1994). However, an accused may waive his or her right against self-incrimination. Miranda, 384 U.S. at 444. For a waiver of the right against self-incrimination to be held constitutional, the waiver must be made "voluntarily, knowingly, and intelligently." Id. Our supreme court has held that a court may conclude that a defendant has voluntarily waived his or her rights only if, under the totality of the circumstances, the court determines that the waiver was uncoerced and that the defendant understood the consequences of the waiver. See State v. Stephenson, 878 S.W.2d 530, 545 (Tenn. 1994).

In this case, the Defendant's statement was clearly elicited through a custodial interrogation. However, the record on appeal reflects that the Defendant was properly advised of his Miranda rights, and that the Defendant understood those rights. The Defendant signed a written waiver of his rights, including the right against self-incrimination. When asked at the conclusion of the custodial interrogation if Investigator Wilson "abused [the Defendant] in any way to get this statement," the Defendant responded "no." Although the Defendant was wearing a neck brace due to an altercation with the Memphis Police on an unrelated matter, we cannot conclude that this rendered the Defendant incapable of voluntarily and knowingly waiving his rights. Additionally, Investigator Wilson testified that the Defendant was "coherent" at the time of the interview, and the Defendant has presented no evidence to the contrary.

Indeed, from our reading of the record, it appears that the Defendant demonstrated little hesitation in providing his statement, presumably because he erroneously believed that he was subject to little or no culpability for acting merely as a "lookout" while his cohorts committed the crimes at issue. In short, the record before us does not preponderate against the findings of the trial court. Accordingly, we conclude that the trial court did not err in denying the Defendant's motion to suppress his statement. This issue is without merit.

## II. Sufficiency

The Defendant also asserts that there is insufficient evidence for any rational trier of fact to find beyond a reasonable doubt that he was guilty of the three offenses for which he was convicted. In support of this assertion, the Defendant argues in his appellate brief:

> The record lacks any evidence that Mr. Farris was guilty of aggravated robbery pursuant to TCA section 39-13-402. There was no proof before the jury that Mr. Farris had a weapon, inflicted bodily injury on the victims nor took property from the victims.
> The record is vacant of any proof that Mr. Farris entered the habitation of the victims without their effective consent pursuant to TCA section 39-14-403.
> The record lacks any proof that Mr. Farris exercised control over property of the victims pursuant to TCA section 39-14-103.

Therefore, the Defendant claims, the evidence fails to establish his guilt beyond a reasonable doubt. We disagree.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

The Defendant was convicted of aggravated burglary, which includes the entry of a habitation and the commission of a theft therein. See Tenn. Code Ann. §§ 39-14-402 and 39-14-403. The

Defendant was also convicted of aggravated robbery, which is defined, in relevant part, as the intentional or knowing theft of property from the person of another by violence or fear and accomplished with a deadly weapon. See Tenn. Code Ann. §§ 39-13-401 and 39-13-402. Finally, the Defendant was convicted of theft of property valued at $10,000 or more but less than $60,000. A person commits theft of property if that person: 1) "knowingly obtains or exercises control over the property," 2) "with intent to deprive the owner" of the property, and 3) "without the owner's effective consent." Tenn. Code Ann. § 39-14-103. In addition to these three elements, the fact finder must also determine the classification of the theft, based on the value of the property stolen. A theft of property valued at $10,000 or more but less than $60,000 is a Class C felony. See Tenn. Code Ann. § 39-14-105(4).

The Defendant argues that he cannot be found guilty of the three crimes he was convicted of because he never actually entered the victims' home; he did not personally rob the victims at gunpoint; he did not personally take the victims' property through fear; nor did he possess a gun. In short, the Defendant argues that he cannot be found guilty because he was not the principal in the crimes committed by his two cohorts, both of whom are now deceased. The Defendant's argument is misplaced. Our law supports the Defendant's convictions under the theory of criminal responsibility.

Tennessee statutes hold that a person is "criminally responsible for an offense committed by the conduct of another if: [A]cting with intent to promote or assist the commission of the offense, or to the benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2). This statute codifies the longstanding common law theories of "accessories before the fact and aiders and abettors." Id., Sentencing Commission Comments. However, criminal responsibility is not itself a separate crime; rather, it is "solely a theory by which the State may prove the defendant's guilt of the alleged offense. . . based upon the conduct of another person." State v. Lemacks, 996 S.W.2d 166, 170 (Tenn. 1999).

Under a theory of criminal responsibility, a defendant's presence and companionship with the perpetrator of a felony before and after the commission of the offense are circumstances from which that defendant's participation in the crime may be inferred. See State v. Ball, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998). No particular act need be shown, and the defendant need not have played a physical role in the crime in order to be held criminally responsible for the crime. See State v. Caldwell, 80 S.W.3d 31, 38 (Tenn. Crim. App. 2002). Rather, to be held criminally responsible for the acts of another, the defendant need only "'associate himself with the venture, act with knowledge that the offense is to be committed, and share in the criminal intent of the principle in the first degree.'" Id. (citing State v. Maxey, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994).

In this case, the record reveals that the Defendant both acted with intent to "assist [in] the commission of the offense[s]" and "benefit[ed] in the proceeds or results of the offense[s]." Tenn. Code Ann. § 39-11-402(2). In addition to Mr. Alperin's testimony that placed the Defendant in association with his two armed cohorts, the Defendant has himself admitted, in substantial detail,

-7-

his involvement in the commission of the offenses. The Defendant stated that he "stayed outside as a lookout," but also admitted to aiding in the planning of the offenses by participating in casing the house the day before the offenses were committed. In addition to assisting in the commission of the crimes through planning and acting as a lookout, the Defendant also benefitted from the proceeds of the offenses, stating that he received $150.00 for his role in the crimes. Moreover, the record supports, and the Defendant does not challenge, the jury's findings that all of the essential elements of aggravated burglary, aggravated robbery, and theft of property were established in this case.

We conclude that the Defendant's aid in the commission of the offenses, as well as his monetary benefit, have rendered him criminally responsible for each of the three offenses for which he was convicted. Accordingly, viewed in the light most favorable to the State, we conclude that the Defendant has failed to meet his burden of demonstrating that there was insufficient evidence presented at trial for a rational trier of fact to find beyond a reasonable doubt that he was guilty of aggravated burglary,[5] aggravated robbery, and theft of property over $10,000 but less than $60,000. Thus, this issue has no merit.

### III. Sentencing

In his final issue on appeal, the Defendant asserts the trial court erred by imposing an excessive sentence. To support this claim the Defendant argues that the trial court failed to make "findings of fact that are adequately supported by the record," and failed to give "due consideration and proper weight to the factors and principles set out under the sentencing law." A transcript of the sentencing hearing is not contained in the record on appeal. Because the Defendant failed to prepare an adequate record on appeal pertaining to sentencing, we are precluded from determining this issue on its merits.

When a party seeks appellate review, the party is charged with the "duty to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues forming the basis of the appeal." State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993) (citing State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983)). See also Tenn. R. App. P. 24(b).[6] It is well established that "an appellate court is precluded from considering an issue when the record does not contain a transcript or statement of what transpired in the trial court with respect to the issue." State v. Draper, 800 S.W.2d 489, 493 (Tenn. Crim. App. 1990). See also Ballard, 855 S.W.2d at 560-61. Moreover, in the absence of a record to review "the appellate court must conclusively presume that the ruling of the trial judge was correct, the evidence was sufficient to support the defendant's conviction, or the defendant received a fair and impartial trial." Draper, 800 S.W.2d at 493. See

---

[5]We note that the judgment entered for the aggravated burglary conviction erroneously refers to the conviction as being a violation of "T.C.A. # 39-14-401," rather than the correct statute, "T.C.A. 39-14-403."

[6]"If a stenographic report or other contemporaneously recorded, substantially verbatim recital of the evidence or proceedings is available, the appellant shall have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn R. App. P. 24(b).

also State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991).  Accordingly, an appellant's failure to include a complete transcript of the proceedings forming the basis of an appeal results in waiver of any challenge of the lower court's ruling.  See Ballard, S.W.2d at 560-61; Draper, 800 S.W.2d at 493.

Because the Defendant failed to prepare an adequate record on appeal by omitting the sentencing hearing transcript, this Court is prevented from properly reviewing the issue.  Therefore, any claim of error pertaining to sentencing cannot be addressed by this Court.  See State v. Kathryn Lee Adler, No. W2001-00951-CCA-R3-CD, 2002 WL 1482704, at *6-7 (Tenn. Crim. App., Jackson, Feb. 19, 2002) (holding that the defendant waived consideration of whether sentence was excessive by failing to provide the appellate court with a transcript of the sentencing hearing). Accordingly, we conclude that the Defendant's sentencing issue is waived.

## CONCLUSION

Based on the foregoing reasoning and authorities, we affirm the judgments of the trial court as to the Defendant's convictions and sentence.  This case is remanded solely for the purpose of correcting the judgment of conviction for aggravated burglary to reflect the violation of Tennessee Code Annotated section 39-14-403.

_____
DAVID H. WELLES, JUDGE