IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 7, 2006

**STATE OF TENNESSEE v. DONTE MONTGOMERY**

**Appeal as of Right from the Criminal Court for Shelby County**
**No. 03-05873   W. Mark Ward, Judge**

---

**No. W2006-00347-CCA-R3-PC  - Filed February 26, 2007**

---

The Petitioner, Donte Montgomery, pled guilty to one count of possession with the intent to sell more than 0.5 grams of cocaine, and the trial judge imposed a sentence of six years in the workhouse as a standard offender.  The Petitioner filed a petition for post-conviction relief, which was dismissed by the post-conviction court after a hearing.  On appeal, the Petitioner contends he was not afforded the effective assistance of counsel, and his guilty plea was not voluntarily entered.  We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Byron B. Winsett, III, Memphis, Tennessee, for the Appellant, Donte Montgomery.

Robert E. Cooper, Jr., Attorney General and Reporter; Brian Clay Johnson, Assistant Attorney General; William L. Gibbons, District Attorney General; Chris Scruggs, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**
**I.  Facts**
**A. Guilty Plea**

        This appeal arises from the dismissal of the Petitioner's petition for post-conviction relief.  The Petitioner was arrested and charged with possession with the intent to sell more than 0.5 grams of cocaine.  He was appointed counsel from the Shelby County Public Defender's Office ("Counsel"), and, on April 5, 2004, he pled guilty to possession with the intent to sell more than 0.5 grams of cocaine.  The following facts, as stated by the prosecutor, formed the basis for the Petitioner's guilty plea: while out on routine patrol, officers observed the Petitioner making a transaction with Lisa Frances.  Officers then observed the Petitioner reaching underneath a nearby trash can, and when the Petitioner saw the officers, he dropped the trash can.  The officers detained

the Petitioner, looked under the trash can, and found crack cocaine wrapped in a brown paper bag. Frances stated that she was about to purchase drugs from the Petitioner who had $207.00 cash on his person.

Also, at the hearing, the State explained that the negotiated settlement called for six years in the workhouse and a fine. The State described the above mentioned facts as the basis for the plea, which Counsel stipulated would be the State's proof. The Petitioner then testified that he was twenty-one years old, had a tenth grade education, and was pleading guilty according to those facts. The Petitioner stated he understood he had a right to counsel at every stage of the proceeding, he had a right to a jury trial, he had a right to confront witnesses, and he was waiving all those rights. The Petitioner stated that the plea was voluntary, and no one made promises, threats, or tried to force the Petitioner to plead guilty. The Petitioner also stated he was satisfied with the manner in which Counsel handled the matter. The trial court found the plea was entered into "freely, voluntarily, [and] understandingly given."

After the Petitioner's guilty plea, the Petitioner made a motion to suspend sentence, heard by the trial court on June 8, 2004. The Petitioner then admitted he had numerous previous brushes with the law, but, at that time, he realized that "the unnecessary things [he did] in the past [were] not worth all this pain, stress and suffering . . . ." He asked for the opportunity to get his G.E.D. while out on probation. The Petitioner stated he had not had any problems with marijuana since being incarcerated, and he had a handle on his drug problem. The Petitioner was willing to take random and frequent drug tests, enter a drug treatment program, and he had a job if he were granted probation. The Petitioner stated he was wearing a special orange and white suit because he was caught masturbating in the Shelby County jail and was placed in the obscene action pod.

On cross-examination, the Petitioner stated he had been selling drugs since he was sixteen. He had been arrested over ten times as an adult and previous opportunities for probation had not gone well. The Petitioner said he sold crack cocaine to people he knew, and he kept a list of people in his phone in order to avoid getting caught selling to an undercover officer.

The trial court determined the Petitioner should not be granted probation as he had shown no respect for anyone and had never done anything in his life besides selling drugs. Additionally, the trial court noted the Petitioner's poor behavior while awaiting his hearing and that the Petitioner had called the presentence report officer a racist and was "unruly" to her.

### B. Post-Conviction

At the post-conviction hearing, the following evidence was presented: the Petitioner testified that the first time he met Counsel was at his arraignment when Counsel came to the Petitioner with an offer of eight years for the offenses charged. The Petitioner stated an eight year sentence was not acceptable, and Counsel returned with an offer of six years. The Petitioner again stated this was unacceptable, but Counsel told him that this offer was as low as the State was willing to go. Counsel stated that the odds were against the Petitioner because the State would be able to call Frances to

testify about the transaction. The Petitioner reiterated that six years was unacceptable and that he preferred trial.

The Petitioner testified that the second time he met with Counsel was on the day of his trial. Counsel again advised him to take the six-year offer, stating that the State could use his prior criminal history against him at trial, but Counsel did not give the Petitioner further explanation as to what that meant. The conversation then became heated between Counsel and the Petitioner, and the Petitioner requested that he be given another lawyer. The matter was brought to the attention of the trial court, who denied the request. The Petitioner stated he wanted to go to trial. However, Counsel persisted in telling the Petitioner that his odds were not good. The Petitioner claimed Counsel told him he would get probation "beyond a reasonable doubt" and that he was "practically assured" of probation. Counsel also advised the Petitioner that the State could prove intent to sell simply by the amount of drugs involved. The Petitioner stated he and Counsel never discussed the possibility of an illegal search. The Petitioner described his feeling that his case was somewhat hopeless, so he relented and pled guilty in order to receive six years. Upon further questioning, the Petitioner then recalled a meeting prior to the date of his guilty plea where Counsel conveyed an offer of four years, which was rejected.

The Petitioner testified that the final time he met with Counsel was for his probation hearing after his guilty plea. Although Counsel told him the judge would determine whether he would receive probation, Counsel stated that, considering the Petitioner's record, he could not see a reason why probation would not be granted. The Petitioner testified that had he not been guaranteed probation by Counsel, he would have chosen to go to trial.

In addressing Counsel's conduct at the probation hearing, the Petitioner stated Counsel asked him a few questions but did not perform as he had hoped. Counsel allowed the State to interrogate the Petitioner and "she wasn't nice." The State brought up the Petitioner's juvenile history and past charges, and Counsel objected to nothing. After the hearing, Counsel said the Petitioner could come back in three months and attempt to have his sentence reduced. The Petitioner testified he was never told of his right to appeal a denial of probation.

On cross-examination, the State examined the Petitioner on the plea colloquy between him and the trial court. The State also examined the Petitioner regarding testimony he gave on December 4, 2003, in voir dire, where the Petitioner stated he did not want to plead guilty and accept a four year sentence. The Petitioner admitted that, after that hearing, he decided that he agreed with Counsel that he should plead guilty. The Petitioner also admitted he had roughly twenty-four prior contacts with the criminal justice system in one way or another. He did not recall Counsel telling him that probation would not be an option if he went to trial. The Petitioner was also questioned on his behavioral problems after he pled guilty but before he was denied probation. Specifically, the Petitioner was caught masturbating, and he had a dispute with he presentence report officer. The Petitioner felt that the trial court was not wrong in denying probation due to his extensive criminal history and behavioral problems.

Counsel testified that, at the time he was appointed counsel for the Petitioner, he had been practicing law for nine years. The day he was appointed, the Petitioner's arraignment date, he conveyed an offer of eight years, which the Petitioner was not interested in. Counsel testified he visited the Petitioner in jail on October 24, 2003, which is contradictory to what the Petitioner testified. That day, the two reviewed the indictment, offer, range of punishment, pre-sentence report, juvenile and adult records, and potential options. Counsel also stated he told the Petitioner that, while his prior record would not be introduced at a trial, it would be considered at a probation or sentencing hearing. Counsel subsequently filed motions for discovery, exculpatory evidence, impeachment evidence, witness statements, and he requested a Rule 609 hearing to determine if the Petitioner's prior record could be used against him if he were to testify.

At the next hearing on November 5, 2003, Counsel attempted to negotiate the charges down to a misdemeanor possession charge or a class C felony. The State was not willing to accept either option. On that date, Counsel voir dired the Petitioner about the offers, and the matter was reset so the State could attempt to locate Frances, whose testimony might have had a bearing on the State's offer. On December 4, 2003, Counsel was able to negotiate an offer of four years if accepted that day only, but the Petitioner rejected that offer. Counsel again voir dired the Petitioner about that decision.

Counsel stated he did not in any way induce the Petitioner to plead guilty to the charge. Instead, the Petitioner's family contacted Counsel and stated they had found a private defense attorney who might be interested in handling the case. This attorney, Mr. McAfee, contacted Counsel and the two discussed the case, including whether Counsel could obtain another offer and avoid trial. Counsel called the Prosecutor who stated that there might be another offer on the day of trial, depending on whether Frances came to testify. Counsel testified that the case could have been continued because the State had a subpoena issued for Frances, but it would have been within the discretion of the judge.

As to the Petitioner's statement that he was guaranteed probation "beyond a reasonable doubt," Counsel testified that that was completely inaccurate. Counsel had never used that phrase to describe chances for probation. The only time probation is guaranteed is if it is part of the plea agreement, in which case there would be no need for a probation hearing. Counsel's recollection was that the trial court determined the Petitioner would not be a good candidate for probation because of his extensive juvenile and adult history — twenty-four arrests — and his actions and attitude while in jail. Counsel felt the trial court in no way abused its discretion in not granting probation, so there was no need to file an appeal on that issue. In addressing whether the crack cocaine could be suppressed, Counsel stated he thought there was not a problem with the stop. The police did not find the narcotics on the Petitioner's person, they observed a transaction, and interviewed a witness about the exchange.

On cross-examination, Counsel said he met with the Petitioner at least four times, each time discussing the possibility of settling the case. The Petitioner's goal was to get out of jail any way he could, so Counsel attempted to negotiate a simple possession charge but was unsuccessful.

Counsel could not say whether the possibility of probation was the Petitioner's primary concern, but he was definitely interested in getting out of jail. Counsel told the Petitioner he had some factors in his favor, including his age and lack of a prior felony record, but there were also negatives which made his odds "50/50 at best." Counsel felt the Petitioner would be a moderately good witness so long as he took responsibility for his actions. Counsel felt the Petitioner's lack of an education or job would not necessarily be a big factor, especially in light of who the judge was. Counsel had previous experience with that judge, and he had successfully obtained probation for offenders with past difficulties similar to those of the Petitioner.

Counsel testified that he discussed with the Petitioner the theory of constructive possession at length. They discussed the details of the Petitioner's case, including the evidence against the Petitioner. Counsel felt that, because the drugs were found underneath the trash can, the Petitioner had no privacy rights by which to suppress the evidence. Counsel did not make a motion to suppress nor did he examine whether the Petitioner could claim any privacy rights in abandoned property. He made these decisions from his knowledge and experience. Counsel voir dired the Petitioner in order to make clear that he was rejecting the offer of four years. Counsel did not tell the Petitioner of his right to appeal because he thought there was clearly no abuse of discretion, and Counsel did not want to file a frivolous appeal.

Based upon this evidence the post-conviction court dismissed the Petitioner's petition for post-conviction relief. It is from that judgment that the Petitioner now appeals.

## II. Analysis

The Petitioner asserts that he is entitled to post-conviction relief because he did not receive the effective assistance of counsel and his guilty plea was not entered into knowingly or voluntarily. The Petitioner argues that he only pled guilty to the charge because Counsel practically assured him that he would receive probation. The State contends the Petitioner has not carried his burden of proof regarding either claim.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-103 (2003). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2003). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999); Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of

correctness.  Id. at 457.

## A. Ineffective Assistance of Counsel

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution. State v. White, 114 S.W.3d 469, 475 (Tenn. 2003); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975).  The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable.  Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Melson, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases.  Baxter, 523 S.W.2d at 936.  To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (citing Strickland, 466 U.S. at 688 (1984)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances.  Strickland, 466 U.S. at 690; State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988).  The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time.  Strickland, 466 U.S. at 690; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Burns, 6 S.W.3d at 462.  Finally, we note that a petitioner in a criminal case is not entitled to perfect representation, only constitutionally adequate representation.  Denton v. State, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" Burger v. Kemp, 483 U.S. 776, 794 (1987) (quoting United States v. Cronic, 466 U.S. 648, 665 n.38 (1984)).  Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result.  Williams v. State, 599 S.W.2d 276,

279-80 (Tenn. Crim. App. 1980). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. House, 44 S.W.3d at 515 (citing Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996)). However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. House, 44 S.W.3d at 515.

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the Strickland test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; Nichols v. State, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." Id. at 694; Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994). When, as is here, a petitioner claims ineffective assistance of counsel in relation to a guilty plea, the Petitioner can satisfy the prejudice prong if he shows that, but for counsel's deficiency, he would not have pled guilty but would have instead insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

In the present case, the Petitioner alleges deficiency on the part of Counsel because Counsel failed to render "useful professional advice" concerning the Petitioner's case. Further, the Petitioner asserts that Counsel failed to express a proper opinion as to the likelihood of probation, failed to offer proper advise on the State's ability to offer evidence on intent, and failed to file a motion to suppress or research the issue.

First, the post-conviction court explicitly determined Counsel to be credible in his statement that he informed the Petitioner that his chance of probation was "50/50 at best." Counsel stated he never would have used the phrase "beyond a reasonable doubt" in relation to chances for probation, and we conclude the evidence on this issue does not preponderate against the ruling by the post-conviction court. Counsel was not deficient in weighing the factors for and against the Petitioner, including using his knowledge of the trial judge and prosecutor, in rendering his opinion. Additionally, certain issues arose after the Petitioner pled guilty, which weighed heavily against probation. These incidents — the Petitioner being caught masturbating in jail, and his disagreement and attitude towards the presentence report officer — Counsel could not have foreseen when giving his opinion on the benefits of a guilty plea.

Second, the Petitioner claims that, because Counsel informed the Petitioner that the State could prove intent to sell merely by the amount of drugs, Counsel was deficient. Tennessee Code Annotated section 39-17-419 (2003) states, "It may be inferred from the amount of a controlled substance or substances possessed by an offender, *along with other relevant facts surrounding the arrest*, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing" (emphasis added). If the above emphasized phrase had been conveyed to the Petitioner, he claims he would not have pled guilty, and Counsel's performance was deficient because he omitted this phrase when explaining the law. The post-conviction court found the testimony of Counsel to be credible and discredited the testimony of the Petitioner. However, even if we were to credit the testimony of the Petitioner, he has not presented evidence which would cause

us to find the post-conviction court erred in determining that the omission of this phrase by Counsel fell below an objective standard of reasonableness. In fact, the record reveals these facts surrounding the arrest: the Petitioner was involved in a transaction with another person; the Petitioner had no method by which to use the crack cocaine himself; and the Petitioner had over $200.00 on his person. In our view, these "relevant facts surrounding the arrest" could suggest that the Petitioner possessed the cocaine for resale. Counsel would not have been deficient even if he had not specifically explained this to the Petitioner.

Finally, the Petitioner claims that Counsel was deficient in not filing a motion to suppress the crack cocaine found at the scene and not doing any research on the suppression issue. Counsel admitted in cross-examination that he did not believe that the Petitioner had an argument that the evidence found at the scene was inadmissible. This belief was based on Counsel's eight years of experience in criminal defense.

This Court has stated that, if arguable grounds exist to suppress incriminating evidence, then an attorney, as a zealous advocate for the client, should move to suppress that evidence. See Robert C. Bellafant v. State, No. 01C01-9705-CC-00183, 1998 WL 242449, at *6 (Tenn. Crim. App., at Nashville, May 15, 1998), *no Tenn. R. App. P. 11 application filed*. However, even if the seizure of the evidence provided arguable grounds for a motion to suppress, and his attorney's failure to file the motion was deficient performance, the Petitioner must demonstrate that he was prejudiced by the deficiency. In order to demonstrate prejudice, the Petitioner would have to prove that the evidence was inadmissible by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2003).

The Affidavit of Complaint stated:

While on routine patrol affiant observed the defendant making a transaction with . . . Lisa Frances . . . . Affiant observed the defendant reaching underneath the trash can and when the affiant approached him the defendant drop [sic] the trash can. The defendant was detained by the affiant. Affiant looked underneath the trash can and found wrapped in a brown paper what appeared to be crack. The defendant was taken into custody." . . . Lisa Frances advised affiant that she was getting ready to purchase some drugs from the defendant.

At the guilty plea hearing, the State described the evidence against the Petitioner as follows:

[W]hile on a routine patrol officers of the Memphis police department observed the defendant, Donte Montgomery, making a transaction with a female white in a vehicle with Mississippi tags. Officer observed the defendant reaching underneath the trash can while making the appearance of a transaction. When officers approached the defendant he dropped the trash can. Defendant was detained. And when officers looked underneath the can they found wrapped in brown paper — wrapped in a brown paper bag what appeared to be crack cocaine. Defendant was taken into custody.

-8-

The female white who the defendant appeared to be in a transaction with advised officers that she was getting ready to purchase some drugs from the defendant.

In summary, officers saw two people in what appeared to be a transaction. Officers approached the two, and the Petitioner dropped a trash can he had been reaching under. Officers "detained" the Petitioner in order to look under the trash can, where they found crack cocaine. The Petitioner was then arrested.

The Petitioner has claimed that this situation should have prompted Counsel to, at least, perform research on a motion to suppress. While we may agree that this situation should have, at a minimum, called for some legal research, the Petitioner has not proven by clear and convincing evidence that he would have prevailed on the motion to suppress.

Pursuant to the Fourth Amendment of the United States Constitution and article I, section 7 of the Tennessee Constitution, warrantless searches and seizures are presumed unreasonable unless the search and seizure were conducted pursuant to narrowly defined exceptions. See State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997). The exception at issue here is an investigatory Terry stop, based on reasonable suspicion. Terry v. Ohio, 392 U.S. 1, 20-21 (1968). If officers have "specific and articulable facts, that a criminal offense has been or is about to be committed" officers can briefly detain and question the individual or individuals. State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000); see U.S. v. Place, 462 U.S. 696 (1983); State v. Harmon, 775 S.W.2d 583 (Tenn. 1989). In State v. Randolph, the Tennessee Supreme Court established the rule that one is "detained" for constitutional purposes when an officer turns on the blue lights of his car in an attempt to stop the person, as this is important in the "totality of the circumstances analysis and the standard of whether a reasonable person would have believed he or she was not free to leave." 74 S.W.3d 330, 337 (Tenn. 2002).

As the Petitioner has not established that the officers activated the blue lights on the patrol car, we conclude the Petitioner was not constitutionally stopped until the officers walked up and detained him. In support of the officers' reasonable suspicion at that point, the officers had seen the Petitioner making a transaction at 12:40a.m., and, when the officers approached the Petitioner, he dropped the trash can from under which he was retrieving something. These facts by themselves would have made a potential case for reasonable suspicion — enough so that we cannot say the Petitioner would have prevailed on a motion to suppress by clear and convincing evidence.

Assuming, arguendo, that the officers did not have the articulable facts for reasonable suspicion, the drugs were not found via a search of the Petitioner. The crack cocaine was found under a trash can. The Petitioner has not presented evidence that would establish by clear and convincing proof that the Petitioner had some right of privacy which would prevent a search of the underside of the trash can. Indeed, Counsel stated that he believed that, at the very least, the doctrine of inevitable discovery would have made the drugs admissible. See State v. Patton, 898 S.W.2d 732,

735 (Tenn. Crim. App. 1994) (citing Nix v. Williams, 467 U.S. 431 (1984)). In short, the Petitioner has not proven by clear and convincing evidence that he would have prevailed had a motion to suppress been filed. The Petitioner has not carried his burden.

### B. Knowing, Intelligent, and Voluntary Plea

The Petitioner has also claimed his guilty plea was not knowing, intelligent, and voluntary due to Counsel's coercive tactics in attempting to get the Petitioner to plead guilty. The Petitioner's claims center around Counsel's over-estimation of the chances for probation, the failure to research and file a motion to suppress, emphasis on the factors weighing against trial, failure to adequately explain constructive possession, failure to adequately explain the situation concerning the potentially unavailable witness, and failure to adequately explain the requirements for intent to be proven by the State.

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. See State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); see also Chamberlain v. State, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). The circumstances include:

> [T]he relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (citing Caudill v. Jago, 747 F.2d 1046, 1052 (6th Cir.1984)). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." Id.

At the Petitioner's guilty plea hearing, the Petitioner stated his plea was voluntarily made. The post-conviction court determined that Counsel "simply gave the Petitioner his best legal advice concerning the matter, including his estimation of the evidence that would be introduced against the Petitioner and his likelihood of conviction." Counsel estimated the odds of probation to be "50/50 at best." Counsel had previously represented clients before the trial court and made that determination based on previous cases. Additionally, it was proper for Counsel to give his opinion on the Petitioner's chances at trial, which, in Counsel's opinion, were not good. Counsel also explained that the State could ask for a continuance in order to attempt to locate the unavailable witness but that would be the trial court's decision to make. Counsel's explanation of constructive possession and intent were adequate, and the Petitioner has not established that Counsel's failure to

address the issue of a motion to suppress caused his plea to be the result of ignorance, misunderstanding, coercion, inducement, or threat. Thus, the evidence of record does not preponderate against the trial court's findings, but supports the findings of fact and conclusions of law reached by the post-conviction court.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the judgment of the post-conviction court.

ROBERT W. WEDEMEYER, JUDGE