# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs March 24, 2010

## STATE OF TENNESSEE v. WILLIAM ROBERT WILSON

**Appeal from the Criminal Court for Putnam County**
**No. 08-0464   Leon Burns, Judge**

---

**No. M2009-01146-CCA-R3-CD - Filed July 26, 2010**

---

Appellant William Robert Wilson, was arrested for driving under the influence ("DUI") after being observed driving erratically by a deputy with the Putnam County Sheriff's Office. The Putnam County Grand Jury indicted Appellant for one count of DUI; one count of DUI, third offense; one count of driving on a revoked license; and one count of violation of the implied consent law. Following a jury trial and his waiver of proof regarding DUI, third offense, Appellant was convicted of DUI and driving on a revoked license and entered a plea to DUI, third offense.[1] The trial court sentenced Appellant to eleven months and twenty-nine days for DUI, third offense and five months and twenty-nine days for driving on a revoked license. These sentences were ordered to be served concurrently with service of 130 days in confinement and the remainder in a community-based alternative program. Appellant appeals arguing that: (1) the evidence was insufficient to support his conviction for DUI; (2) the trial court erred in denying Appellant's motion to dismiss his case because the officer did not have reasonable suspicion to support the traffic stop; (3) the trial court erred in denying Appellant's motion for continuance; and (4) the trial court erred in denying Appellant's request for a jury instruction on the State's duty to preserve evidence. We have reviewed the record on appeal and have found no basis for reversal. Therefore, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

David N. Brady, District Public Defender and Allison M. Rasbury, Assistant Public Defender, Cookeville, Tennessee, for the appellant, William Robert Wilson.

---

[1] It appears from the transcript that the implied consent charge was not submitted to the jury.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Bill Gibson, District Attorney General, and Marty Savage, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

On October 7, 2007, Deputy Brandon Masters with the Putnam County Sheriff's Department was traveling on Nashville Highway. It was about 7:50 in the evening. As Deputy Masters reached a straight stretch of road, he observed an oncoming vehicle that was traveling towards him in his lane. Deputy Masters swerved to the side of the road and almost went into a ditch. Deputy Masters immediately turned around and began to follow the vehicle. As he turned around, he noticed the vehicle swerve across the center line then back into its own lane.

He followed the vehicle for a mile and a half to two miles. During that time, Deputy Masters observed the vehicle swerve back and forth within its own lane. The deputy activated his lights and pulled the vehicle over in the parking lot of the PFS Market. As Deputy Masters approached the vehicle, he noticed an "overwhelming smell of alcohol" coming from Appellant and the vehicle. When he asked Appellant if he had been drinking, Appellant replied that he had consumed three beers and one mixed drink. Deputy Masters also noticed that Appellant's speech was slightly slurred and that Appellant's eyes were red.

Deputy Masters asked Appellant for his driver's license, proof of insurance and proof of registration. Appellant was unable to produce a driver's license and instead provided an identification card. Deputy Masters later determined that Appellant's license had been revoked. At this point Deputy Masters asked Appellant to get out of the vehicle because he wanted Appellant to perform some field sobriety tests. Appellant informed the deputy that he had back trouble and a bad knee. When Deputy Masters asked Appellant what he did for a living, Appellant informed the deputy that he worked in construction.

Deputy Masters administered three field sobriety tests. He first administered the "alphabet test." In this test, Deputy Masters asked Appellant to recite the alphabet from the letter "C" to the letter "T." Appellant made more than one attempt. Appellant was unable to remember the letter "H" the first few times he attempted to recite the alphabet. When he got past the letter "H," Appellant skipped several letters leading up to the letter "T." The second test was the "finger dexterity test." In this test, Deputy Masters asked Appellant to

touch each finger and count "one, two, three, four, four, three, two, one." Deputy Masters demonstrated the test and asked Appellant to complete the sequence three times. While attempting the test, Appellant missed the counts and even missed touching his fingers. Appellant was not able to perform the test in a satisfactory manner. The third test was the nine-step walk and turn test. For this test, the individual is to take nine heel-to-toe steps in a straight line, turn around, and return to the starting point. The individual is to keep their arms at their sides throughout the test. While attempting this test, Appellant's heel and toe touched only one time, Appellant's feet were out of line, and at one point, Appellant lost his balance. Appellant did have to raise his arms to maintain his balance.

After the completion of the field sobriety tests, Deputy Masters determined that Appellant was impaired. Appellant was placed under arrest for DUI. Deputy Masters explained the implied consent law. Appellant initially agreed to a blood alcohol test. However, on the way to the hospital to have blood drawn, Appellant changed his mind and stated that he wanted to have a breath test instead. Deputy Masters proceeded to the jail where there was a breathalyzer machine. When they arrived at the jail, Appellant refused to participate in either test. Appellant signed an implied consent form stating that he refused to take a blood alcohol test.

Deputy Masters's patrol car was outfitted with a video recorder. The video recorder automatically activates when the patrol car's blue lights are activated. The video recorder can also be activated manually. When Deputy Masters turned to follow Appellant, he activated the video recorder. The deputy believed that the video recorder was working throughout the traffic stop. However, he later learned that a portion of the traffic stop was not recorded. He specifically stated that he neither stopped the recorder nor erased the video tape of the stop.

Appellant testified on his own behalf. Throughout his testimony, he contradicted most of Deputy Masters's testimony. Appellant denied swerving into the on-coming lane of traffic. He stated that he never saw a police car traveling in the opposite lane. In addition, Appellant maintained that if Deputy Masters had swerved to avoid Appellant's oncoming vehicle, Deputy Masters would have ended up in the ditch because the ditch began where the white line was on the road. Appellant also stated that the amount of time that Deputy Masters claimed to have followed Appellant was not sufficient to catch up to him at the PFS Market parking lot. Appellant testified that he was driving to the PFS Market and that he did not see Deputy Masters until he pulled into the parking lot.

Appellant asserted that he had given Deputy Masters his driver's license and that Deputy Masters returned it to him. Appellant stated that he did not know at the time of the

traffic stop that his license had been revoked. Appellant also denied that he told Deputy Masters he had consumed three beers and a mixed drink.

Appellant admitted that he agreed to perform the field sobriety tests. He stated that he informed Deputy Masters that he had injured his knee and would have difficulty performing the tests. Appellant stated at trial that he injured his knee and his back while in the army in the early 1990's. Appellant stated that he had reinjured his back about six months before the traffic stop in question. Appellant admitted that his knee and back injury would not affect his ability to perform the alphabet test or the finger dexterity test.

Appellant testified that there were reasons for his poor performance on the field sobriety tests. Appellant stated that he performed poorly on the alphabet test because he was tired after a long day at work and nervous about the traffic stop. On the walk and turn test, Appellant asserted that he reinjured his knee during the test, but he admitted he did not tell Deputy Masters about reinjuring his knee. Appellant stated that Deputy Masters's instruction regarding the finger dexterity test were vague and that he performed the test three times even though Deputy Masters told him to complete the sequence "a number of times."

Appellant testified at trial that his knee and back injuries do not interfere with his job in construction because he is mainly a supervisor and mostly avoids any heavy lifting. He also stated that he wears a brace on his knee while on the job.

With regard to the implied consent form, Appellant admitted that he had signed the form. He asserted that he refused to take the breathalzyer test because he was concerned about the accuracy of the test. He also stated that he did not trust Deputy Masters, so he refused to take either test.

In June 2008, the Putnam County Grand Jury indicted Appellant for one count of DUI; one count of DUI, third offense; one count of driving on a revoked license; and one count of violation of the implied consent law. On January 21, 2009, Appellant filed a motion to dismiss the case. In his motion, he alleged that the traffic stop was illegal and, therefore, all evidence obtained as a result of the stop was inadmissible. The trial court held a hearing on the motion on April 6, 2009. At the conclusion of the hearing, the trial court denied Appellant's motion to dismiss.

A jury trial was held on April 9, 2009. The jury found Appellant guilty of DUI and driving on a revoked license. Appellant waived further proof concerning the DUI, third offense and entered a plea to DUI, third offense. The trial court held a separate sentencing hearing on May 4, 2009. The trial court sentenced Appellant to eleven months and twenty-nine days for DUI, third offense and five months and twenty-nine days for driving on a

-4-

revoked license. These sentences were ordered to be served concurrently with service of 130 days in confinement and the remainder in a community-based alternative program.

Appellant filed a timely notice of appeal.

## ANALYSIS

### Sufficiency of the Evidence

Appellant argues that the evidence was insufficient to convict him of DUI because the State failed to prove that he was under the influence of an intoxicant. Appellant does not challenge the use of two prior DUI convictions to support a conviction of DUI, third offense. The State argues that the evidence was sufficient to support his conviction.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the state. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

Tennessee Code Annotated section 55-10-401(a)(1) states, "It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any public roads . . . while: (1) Under the influence of any intoxicant . . . ." On appeal,

Appellant argues that the evidence, consisting of Deputy Masters testimony and Appellant's testimony, was insufficient to meet the requirements of this statute. However, as stated above, the trier of fact makes the final determination as to the credibility of the witnesses and the weight and value to be given to evidence. *Pruett*, 788 S.W.2d at 561. Clearly, the jury determined the officer's testimony to be more credible and have more weight than that of Appellant's testimony.

When viewing the evidence in a light most favorable to the State, Deputy Masters saw Appellant crossing the center line as he was driving toward the deputy. As Deputy Masters followed Appellant, he saw Appellant swerve within his own lane. After pulling Appellant over, Deputy Masters smelled alcohol on Appellant. He administered the alphabet test, the finger dexterity test, and the walk-and-turn. Appellant was unable to successfully perform any of the three tests. This is adequate evidence for a reasonable trier of fact to conclude that Appellant was under the influence of an intoxicant.

Therefore, this issue is without merit.

**Motion to Dismiss**

Appellant argues that the trial court erred in denying his motion to dismiss the case against him because Deputy Masters did not have reasonable suspicion that a traffic violation had taken place and, therefore, the traffic stop was illegal. The State argues that Appellant's erratic driving was a sufficient basis upon which Deputy Masters would have reasonable suspicion to initiate the traffic stop.

Appellant filed a motion to dismiss his case because the stop was illegal and all evidence obtained as a result of the stop is inadmissible. The trial court held a hearing on Appellant's motion. At the hearing on the motion, Deputy Masters testified that Appellant crossed the center line as he was approaching Deputy Masters. Deputy Masters testified that he actually had to swerve to avoid being hit by Appellant because Appellant was a quarter to a third in Deputy Masters's lane. In addition, Deputy Masters testified that while he was backing out of a driveway to turn around, he saw Appellant swerve into the lane of oncoming traffic a second time. Furthermore, Deputy Masters testified that as he followed Appellant he saw Appellant swerve back and forth within the lane. Deputy Masters's testimony was the sole evidence presented at the hearing. It appears from the transcript the video recording of Appellant's driving was not submitted into evidence at the hearing. The trial court denied the motion immediately following the hearing, finding that Deputy Masters had reasonable suspicion to stop Appellant.

Appellant's "motion to dismiss" is for all intents and purposes a motion to suppress. For this reason, we will review the motion as a motion to suppress. This Court will uphold a trial court's findings of fact in a suppression hearing unless the evidence preponderates otherwise. *State v. Hayes*, 188 S.W.3d 505, 510 (Tenn. 2006) (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). "[A]n appellate court's review of the trial court's ruling is not limited to the record of the suppression hearing but extends to the entire record of proceedings . . . ." *State v. McCrary*, 45 S.W.3d 36, 41 (Tenn. Crim. App. 2000) (citing *State v. Henning*, 975 S.W.2d 290, 299 (Tenn. 1998)). On appeal, "[t]he prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. Our review of a trial court's application of law to the facts is de novo, with no presumption of correctness. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001) (citing *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999); *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997)). When the trial court's findings of fact are based entirely on evidence that does not involve issues of witness credibility, however, appellate courts are as capable as trial courts of reviewing the evidence and drawing conclusions, and the trial court's findings of fact are subject to de novo review. *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000).

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect individuals against unreasonable searches and seizures by government agents. *See* U.S. Const. amend. IV; Tenn. Const. art. I, § 7. "These constitutional provisions are designed to 'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'" *Keith*, 978 S.W.2d at 865 (quoting *Camara v. Municipal Court*, 387 U.S. 523, 528, 87 S. Ct. 1727 (1967)). The Tennessee Supreme Court has noted previously that "[a]rticle I, [section] 7 [of the Tennessee Constitution] is identical in intent and purpose with the Fourth Amendment [of the United States Constitution]," and that federal cases applying the Fourth Amendment should be regarded as "particularly persuasive." *Sneed v. State*, 423 S.W.2d 857, 860 (Tenn. 1968).

Under both constitutions, "a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *Yeargan*, 958 S.W.2d at 629 (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55, 91 S. Ct. 2022 (1971)); *see also State v. Garcia*, 123 S.W.3d 335, 343 (Tenn. 2003). A police officer's stop of an automobile constitutes a seizure under both the United States and Tennessee Constitutions. *See Whren*

*v. United States*, 517 U.S. 806, 809-10, 116 S. Ct. 1769 (1996); *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 450, 110 S. Ct. 2481 (1990); *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S. Ct. 1391 (1979); *State v. Vineyard*, 958 S.W.2d 730, 734 (Tenn. 1997). Further, our supreme court has stated that "[w]hen an officer turns on his blue lights, he or she has clearly initiated a stop" and the vehicle's driver is "seized" within the meaning of the *Terry v. Ohio*, 342 U.S. 1, 72 S. Ct. 1 (1968) decision. *State v. Pulley*, 863 S.W.2d 29, 30 (Tenn. 1993). Therefore, to be considered "reasonable," a warrantless stop of a driver must fall under an exception to the warrant requirement.

One of these narrow exceptions occurs when a law enforcement officer stops an automobile based on probable cause or reasonable suspicion that a traffic violation has occurred. *Whren*, 517 U.S. at 810; *State v. Randolph*, 74 S.W.3d 330, 334 (Tenn. 2002); *Vineyard*, 958 S.W.2d at 734. If the officer has probable cause to believe that a traffic violation has occurred, any seizure will be upheld even if the stop is a pretext for the officer's subjective motivations in making the stop. *See Whren*, 517 U.S. at 813-15; *Vineyard*, 958 S.W.2d at 734-35. Another such exception occurs when a law enforcement officer initiates an investigatory stop based upon specific and articulable facts that the defendant has either committed a criminal offense or is about to commit a criminal offense. *Terry*, 392 U.S. at 20-21; *Binette*, 33 S.W.3d at 218. This narrow exception has been extended to the investigatory stop of vehicles. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 881, 95 S. Ct. 2574 (1975); *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992). In evaluating whether the law enforcement officer had reasonable suspicion to justify an investigatory stop, this Court must consider the totality of the circumstances, which includes the personal observations and rational inferences and deductions of the trained law enforcement officer making the stop. *See Terry*, 392 U.S. at 21; *Binette*, 33 S.W.3d at 218; *Watkins*, 827 S.W.2d at 294. Objective standards apply, rather than the subjective beliefs of the officer making the stop. *State v. Day*, 263 S.W.3d 891, 903 (Tenn. 2008); *State v. Norword*, 938 S.W.2d 23, 25 (Tenn. Crim. App. 1996). "An officer making an investigatory stop must be able to articulate something more than an 'inchoate and unparticularized suspicion or ''hunch.''" *Day*, 263 S.W.3d at 902 (quoting *Terry*, 392 U.S. at 27). This includes, but is not limited to, objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. *Id.*; *Watkins*, 827 S.W.2d at 294 (citing *United States v. Cortez*, 449 U.S. 411, 418, 101 S. Ct. 690(1981)). A court must also consider the rational inferences and deductions that a trained police officer may draw from the facts and circumstances known to him. *Terry*, 392 U.S. at 21.

In the case herein, it is clear that Appellant was "seized" within the meaning of the state and federal Constitutions. Deputy Masters testified that he initiated a traffic stop of Appellant's vehicle. Thus, in order for the stop to be constitutionally valid, Deputy Masters

must have at least had reasonable suspicion, supported by articulable facts, that Appellant had committed, or was about to commit an offense.

Appellant relies upon *State v. Binette*, 33 S.W.3d 215 (Tenn. 2000), and *State v. Frank Edward Davidson*, No. E2007-02841-CCA-R3-CD, 2008 Tenn. Crim. App. LEXIS 737 (Tenn. Crim. App., at Knoxville, Sept. 10, 2008) (no Westlaw cite available). In *Binette*, a police officer stopped the defendant after following him for several minutes while videotaping the defendant's driving. 33 S.W.3d at 216. The trial court held a hearing on the defendant's motion to suppress based upon whether the officer had reasonable suspicion to stop the defendant. *Id.* At the hearing, the officer did not testify, and the videotape made immediately before the stop was the only evidence introduced. *Id.* The defendant later pled guilty to DUI but reserved a certified question of law as to whether the officer had reasonable suspicion to support the stop. *Id.* On appeal, our supreme court held that the videotape did not show erratic driving on the part of the defendant and, therefore, the officer did not have a reasonable suspicion to stop the defendant. *Id.*

*Frank Edward Davidson* also concerns the investigatory stop of a motorist and a recording of the defendant driving immediately prior to the stop. *See* 2008 Tenn. Crim. App. LEXIS 737. In this case, a witness called the police to report that a possibly intoxicated individual had gotten into a maroon or red car. *Id.* at *2. An officer saw a car fitting the description nearby. The officer began to follow the car and saw that the driver failed to signal when changing lanes and crossed the center line four times. *Id.* at *3. The officer stopped the driver and arrested the defendant for DUI. The defendant subsequently filed a motion to suppress. *Id.* at *2. At the hearing, the officer testified, and the trial court viewed the video recording. The trial court granted the motion to suppress stating in its findings that it did not appear that the defendant crossed the yellow line. *Id.* at *3. On appeal, this Court held that the trial court's decision should be reversed. *Id.* at *15. This Court stated that after viewing the videotape it found that the defendant did actually veer over the yellow line. This evidence in conjunction with the officer's testimony and the information reported to the police dispatcher were enough to find reasonable suspicion to support the stop. *Id.* at *14-15.

Appellant argues that these cases support his argument because the video recording of his driving "does not show any bad driving at all." He states that the officer relied upon his driving to initiate the stop. The fact that the video recording shows that he was not driving poorly means that the officer did not have reasonable suspicion to stop Appellant.

The video recording was not presented at the hearing on the motion but was introduced at trial. However, as stated above, this Court is not limited to the record of the suppression hearing when reviewing the trial court's decision. Therefore, we are able to view the video recording in our review.

We have reviewed the video recording and conclude that it depicts Appellant weaving slightly within the lane. However, at the hearing, Deputy Masters testified that he personally saw Appellant cross the center line on two occasions in addition to weaving within his lane of traffic. Although these events are not visible on the video they are part of the totality of the circumstances relevant to our decision as to the validity of the traffic stop.

This Court has previously held that an officer's observation of a defendant crossing over the center line in addition to weaving within his own lane is sufficient reasonable suspicion to support an investigatory stop and cause the denial of a motion to suppress. *State v. Jody Glen Loy*, No. E2006-02206-CCA-R3-CD, 2008 WL 2229259, at *5 (Tenn. Crim. App., at Knoxville, May 30, 2008).

We conclude that the video recording and the testimony of Deputy Masters demonstrate that there was reasonable articulable suspicion to justify a traffic stop. There is no basis upon which to reverse the trial court's denial of Appellant's motion.

Therefore, this issue is without merit.

### Motion for Continuance

Appellant's next issue is that the trial court erred in denying his motion for continuance. Appellant argues that he was denied a fair trial because trial counsel was unable to gather information to cross-examine Deputy Masters. The State disagrees.

The granting of a continuance rests within the sound discretion of the trial court. *State v. Odom*, 137 S.W.3d 572, 589 (Tenn. 2004). We will reverse the denial of a continuance only if the trial court abused its discretion and the defendant was prejudiced by the denial. *State v. Hines*, 919 S.W.2d 573, 579 (Tenn. 1995). In order to show prejudice, the defendant must demonstrate that a different result might reasonably have been reached if the trial court had granted the continuance or that the denial of the continuance denied the defendant a fair trial. *Id.* Moreover, a defendant who asserts that the denial of a continuance constitutes a denial of due process or the right to counsel must establish actual prejudice. *Odom*, 137 S.W.3d at 589.

Appellant's motion for continuance was made orally the morning of the trial. Appellant's counsel informed the court that Appellant had not been transported to the jail early enough for trial counsel to speak with him. Appellant believed that trial counsel needed more information regarding the road upon which he was stopped. According to Appellant, he disputed some details regarding where Deputy Masters pulled him over and where Deputy Masters turned around to follow Appellant. The trial court denied the motion based on the

fact that the case had been pending from indictment by the grand jury in June 2008 to the trial on April 9, 2009. The trial court also stated that the officer could be cross-examined regarding the disputed details.

Appellant argues that had the continuance been granted "his defense *might* have included more evidence about the location of the stop of the vehicle and the plausibility of the deputy's version of how the stop occurred." Appellant has not demonstrated that a different result would have reasonably been reached if the continuance had been granted. Appellant was allowed to cross-examine Deputy Masters regarding the various locations involved in the stop. In addition, Appellant testified on his own behalf and was allowed to present his own version of the facts to the jury.

We find no abuse of discretion by the trial court and that Appellant has not shown that he was prejudiced by the denial of his motion. Therefore, this issue is without merit.

## **Jury Instruction**

Appellant's final argument is that the trial court erred in failing to instruct the jury on the State's duty to preserve evidence. Appellant's request was due to the fact that two of the three field sobriety tests performed by Appellant were not included on the video recording of the stop. Appellant bases his argument on the State's duty to preserve evidence based on *State v. Ferguson*, 2 S.W.3d 912 (Tenn. 1999). The State argues that due to a mechanical malfunction, the last part of the stop was not recorded and, therefore, the State did not have a duty to preserve the evidence because it never existed.

A trial court has a "duty to give a complete charge of the law applicable to the facts of the case." *State v. Harris*, 839 S.W.2d 54, 73 (Tenn. 1992). Anything short of a complete charge denies a defendant his constitutional right to trial by a jury. *State v. McAfee*, 737 S.W.2d 304, 308 (Tenn. Crim. App. 1987). However, Tennessee law does not mandate that any particular jury instructions be given so long as the trial court gives a complete charge on the applicable law. *See State v. West*, 844 S.W.2d 144, 151 (Tenn. 1992). A charge is prejudicial error "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997) (citing *State v. Forbes*, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995); *Graham v. State*, 547 S.W.2d 531 (Tenn. 1977)). In determining whether jury instructions are erroneous, this Court must review the charge in its entirety and invalidate the charge only if, when read as a whole, it fails to fairly submit the legal issues or misleads the jury as to the applicable law. *State v. Vann*, 976 S.W.2d 93, 101 (Tenn. 1998).

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides every defendant the right to a fair trial.[2] To facilitate this right, a defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to guilt or relevant to punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Further, the prosecution has a duty to turn over exculpatory evidence that would raise a reasonable doubt about a defendant's guilt. *United States v. Agurs*, 427 U.S. 97, 110-11 (1976).

In *Ferguson*, the defendant was arrested for DUI. The videotape of various sobriety tests performed by the defendant was inadvertently taped over before his trial. *Ferguson*, 2 S.W.3d at 914. The defendant appealed arguing that the State violated his Due Process rights by failing to preserve the videotape. In its review of defendant's issue, our state supreme court adopted a test for courts to use in determining whether the loss or destruction of evidence has deprived a defendant of a fair trial. *Id.* at 917. The initial analytical step in this test for determining whether there was any duty to preserve evidence was described as follows:

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*Id.* (quoting *California v. Trombetta*, 467 U.S. 479, 488-89 (1984)). The Court explained that if the proof demonstrates the existence of a duty to preserve the evidence and demonstrates that the State failed in that duty, "the analysis moves to considerations of several factors which guide the decision regarding the consequences of the breach." *Id.* Accordingly, those factors include: "(1) The degree of negligence involved; (2) The significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and (3) The sufficiency of the other evidence used at trial to support the conviction." *Id.* at 917. "If, after considering all the factors, the trial judge concludes that a trial without the missing evidence

---

[2] "As a general rule, . . . a trial lacks fundamental fairness where there are errors which call into question the reliability of the outcome." *Ferguson*, 2 S.W.3d at 914 n.3 (citing *Betts v. Brady*, 316 U.S. 455 (1942); *Watkins v. State*, 393 S.W.2d 141, 144 (Tenn. 1965); *Lofton v. State*, 898 S.W.2d 246, 248 (Tenn. Crim. App. 1994)).

would not be fundamentally fair, then the trial court may dismiss the charges." *Id.* However, dismissal is but one of the trial judge's options. *Id.*

The case at hand is distinguishable from that of *Ferguson* by the fact that the missing field sobriety tests were not taped over, but instead were never recorded because of a mechanical malfunction. This Court has held on more than one occasion that when a malfunction occurs and recordings are not made of the facts in question, the State does not have a duty to preserve the evidence pursuant to *Ferguson*. *See State v. Kenneth Clay Davis*, No. E2006-01459-CCA-R3-CD, 2007 WL 1259206, at *3 (Tenn. Crim. App., at Knoxville, Apr. 30, 2007), *perm. app. denied* (Tenn. Aug. 13, 2007) (holding that malfunction of video recorder in officer's car is not equivalent to the State destroying evidence and, therefore, there is no duty to preserve evidence); *State v. Randall S. Sparks*, No. M2005-02436-CCA-R3-CD, 2006 WL 2242236 (Tenn. Crim. App., at Nashville, Aug. 4, 2006) (holding that failure to record drug transactions due to user error does not create duty to preserve evidence, when there is no evidence to preserve).

As in the cases cited above, Deputy Masters believed that the video recorder was recording the traffic stop of Appellant. The fact that the video recorder malfunctioned and only recorded a portion of the stop does not create duty on the State to preserve evidence which does not exist. *Ferguson* does not create a duty to preserve evidence under the facts at hand. Therefore, the trial court did not err in not instructing the jury on the State's duty to preserve evidence.

## CONCLUSION

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JERRY L. SMITH, JUDGE

-13-